**Katherine SHAW, M.D., Plaintiff,**

v.

**GREENWICH ANESTHESIOLOGY ASSOCS., P.C., Defendant.**

**No. CIV. 3:99CV1076(PCD).**

United States District Court, D. Connecticut.

April 5, 2001.

Victoria De Toledo, Casper & de Toledo, Stamford, CT, for Katherine Shaw, Plaintiff.

Scott R. Lucas, Gary A. MacMillan, Martin, Lucas & Chioffi, Stamford, CT, for Greenwich Anesthesiology Associates, P.C. Defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DORSEY, Senior District Judge.

### I. JURISDICTION

Plaintiff sues under 42 U.S.C. §§ 12101 et seq. and 29 U.S.C. §§ 621 et seq. This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

### II. BACKGROUND

Plaintiff was a practicing anesthesiologist and founder of Defendant, Greenwich Anesthesiology Associates, P.C., in 1976. In 1990, she was diagnosed with arthritis; in 1997, she was diagnosed with diabetes; she has a thyroid deficiency; she was later diagnosed as having fibromyalgia.[1] At the end of October 1997, she voluntarily left work on full-time disability leave. An employment agreement with Defendant covered Plaintiff through the first six months of her disability leave. At approximately the time Plaintiff left, the group was discussing terms under which two other older anesthesiologists might change their work load from full-time to half-time. An agreement was eventually reached whereby these two other doctors would work six months per year, including periods of 24–hour call. As Plaintiff left on full-time leave, she and Dr. Kalan, one of Defendant's member physicians, drafted a joint memorandum regarding the terms of her leave and of possible subsequent part-time work along similar lines as the two other anesthesiologists.

On December 18, 1997 she advised a local hospital by letter that she would not be able to return there to work. In January 1998, one of her physicians, Dr. Crowe, submitted a statement to her disability insurer that she was fully disabled and unable to work. Also in January 1998, Defendant hired two anesthesiologists, ages 32 and 34, to begin work in the summer or fall of 1998 to assume the workload of Plaintiff and the two other doctors who each went on half-time status. While it was envisioned that Plaintiff would return to work in February 1998,

---

1. Fibromyalgia is a condition involving stiffness and soreness of the large muscles in the body.

she never did. She advised Defendant she would not be returning in February. When she did not return to work within six months of leaving, a provision of her employment agreement was triggered and terminated her employment agreement.[2] In a letter dated April 21, 1998, Dr. Markenson, one of her physicians stated that she could return to part-time work. She agreed to return to work in early May 1998. However, she and Defendant were unable to come to a formal agreement as to her compensation, the amount of hours she would work, and when and how those hours would be structured throughout a given year. On May 6 and again on May 12, 1998, she was offered a position for two days per week, both of which she declined. In May 1998, Dr. Crowe submitted additional statements to her disability insurer that she was no longer fully disabled but was partially disabled. On May 13, 1998, Dr. Markenson wrote that she was capable of returning to full-time work.

At the age of 56, Plaintiff filed a claim with the Connecticut Commission on Human Rights and Opportunities ("CHRO") on June 11, 1998.[3] On September 8, 1998, her counsel sent Defendant's counsel a letter agreeing to the two-days-per-week schedule proposed in May 1998 but requesting increased compensation. The parties did not reach a formal agreement. Plaintiff has had no employment as an anesthesiologist since her employment agreement terminated in May 1998. Since then, she has only sought employment as a part-time anesthesiologist.

Plaintiff filed her present complaint on June 8, 1999, subsequently amended on May 23, 2000. Defendant now moves for summary judgment on all counts.

## III. DISCUSSION

### A. Legal Standard for Summary Judgment

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The mere existence of an alleged factual dispute is not, by itself, sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The adverse party must provide sufficient evidence to demonstrate that there is a genuine issue of material fact. *See id.* at 248–49, 106 S.Ct. 2505. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. The court must view the facts in the light most favorable to the adverse party and draw all inferences in its favor. *See Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992). However, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for

---

**2.** There is a discontinuity in the facts presented. She left work full-time on November 1, 1997. Her employment agreement would then have seemed to lapse on May 1, 1998. For some unexplained reasons, Defendant asserted in its April 17, 1998 letter to Plaintiff that it would lapse on May 10, 1998.

**3.** Plaintiff asserts that she filed on June 4, 1998. Although on a motion for summary judgment disputes would normally be resolved in her favor, here she is clearly mistaken. Her CHRO release-to-sue letter fixes her filing date as June 11, 1998.

trial." FED. R. CIV. P. 56(e). A party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986).

In the context of employment discrimination cases, the Second Circuit has cautioned against granting summary judgment in employers' favor when intent is an issue. *See Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir.1994); *see also Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir.1991) (in employment discrimination cases, "where an [employer's] intent and state of mind are placed in issue, summary judgment is ordinarily inappropriate").

### B. ADA (Count I)

■ To establish a *prima facie* case under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, Plaintiff must put forward a reasonable basis for inferring discrimination by showing (1) that Defendant is subject to the ADA; (2) that Plaintiff suffers from a disability within the meaning of the ADA; (3) that she could perform the essential functions of her job with or without reasonable accommodation; and (4) that she suffered an adverse employment actions because of her disability. *See Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 149–50 (2d Cir.1998); *see also Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203–04

(2d Cir.1995) (*prima facie* showing is *de minimus*). To establish the second prong, that she suffers from a disability within the meaning of the ADA, Plaintiff must establish either that "a physical or mental impairment ... substantially limits one or more of [her] major life activities" or that she is "regarded as having such an impairment" by her employer.[4] *See* 42 U.S.C. § 12102(2).

Since Plaintiff fails to show either that her arthritis "substantially limits one or more of her major life activities" or that she "is regarded as having such impairment," she fails to satisfy the second element of her ADA claim and her claim is thus dismissed.[5]

### 1. Plaintiff's arthritis does not substantially limit one or more of her major life activities

■ Plaintiff suffers from severe arthritis.[6] She stopped working full-time because of her arthritis. She qualified for and received disability payments from her disability insurer. Nonetheless, she is not within the ADA definition of disabled since she is not "substantially limit[ed in] one or more of [her] major life activities." *See* 42 U.S.C. § 12102(2)(A).

Whether an activity is a major life activity, "[t]he plain meaning of the word 'major' denotes comparative importance and suggests that the touchstone for determining an activity's inclusion under the statutory rubric is its significance." *Bragdon v.*

---

4. The third way to show a disability under the ADA, that she has a "record of such an impairment," is not at issue in the present case. *See* 42 U.S.C. § 12102(2)(B).

5. Plaintiff alleges that Defendant both discriminated against her directly, *see* 42 U.S.C. § 12112(b)(1), and that it failed to provide her with a reasonable accommodation, *see* 42 U.S.C. § 12112(b)(5)(A). Each legal basis to sue has a slightly different formulation of its *prima facie* requirement. For an example of

the other formulation, based on direct discrimination, *see infra* III.F.2. Both formulations require her to show that she is disabled within the meaning of the ADA, something she fails to do. Both versions of her ADA discrimination claim are dismissed.

6. Plaintiff suffers also from diabetes, a thyroid condition, and fibromyalgia. It is the effect of these maladies on her major life activities that is relevant, not their mere existence.

*Abbott,* 524 U.S. 624, 638, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (alterations in original and internal quotation marks and citation omitted). Equal Employment Opportunity Commission ("EEOC") regulations are entitled to weight in interpreting the ADA. *See Muller v. Costello,* 187 F.3d 298, 312 & n. 5 (2d Cir.1999). The EEOC considers examples of major life activities to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Arthritis can qualify as a disability under the ADA. *See, e.g., Shott v. Rush–Presbyterian,* 2000 WL 765068 (N.D.Ill. June 9, 2000) (undisputed case of disability from arthritis); *Littlefield v. York County,* 2000 WL 760959, at *5 (D.Me. Apr. 28, 2000) (arthritis prevented walking 100–200 feet, therefore disputed issue of material fact whether disabled); *Stafne v. Unicare Homes, Inc.,* 1999 WL 1068490, at *7 (D.Minn. Mar.3, 1999) (arthritis prevented walking more than two city blocks without great pain and mandated the wearing of leg braces, therefore disabled).

As to major life activities other than working, Plaintiff has offered no evidence that she is substantially limited in such activities. She has full use of her body and extremities, doing aerobic training, swimming, walking, and strength training for her upper and lower body on a regular basis. She identifies no activity which she cannot do.[7]

As for the major life activity of working,[8] the inability to work in a specific job does not constitute substantial limitation of a major life activity. "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum that plaintiff[ ] allege that [she is] unable to work in a broad class of jobs." *See Sutton v. United Airlines, Inc.,* 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). "[O]ne must be precluded from more than one type of job, a specialized job, or a particular job of choice." *Id.* at 492, 119 S.Ct. 2139.

Plaintiff does not survive summary judgment here for any of three independent reasons: her failure to allege, her failure to put forward a sufficient argument, and her failure to put forward sufficient evidence. First, Plaintiff fails to allege in her complaint that she is unable to work in a broad class of jobs.

Second, she fails to put forward a sufficient argument. She argues that "no matter what job [she] held, she would have to limit her work to part-time hours." Plaintiff's argument is not sufficient in and of itself. To preserve a claim that she is substantially limited from the major life activity of working, Plaintiff must argue in her opposition memorandum that she is precluded from a broad class of jobs, not that she must be limited to part-time hours. *See Little v. Cox's Supermarkets,* 71 F.3d 637, 641 (7th Cir.1995) ("[J]ust as a district court is not required to 'scour the

---

7. In her deposition, Plaintiff asserts that on at least one occasion, she stopped gardening because it was too painful, though she could have continued if she forced herself to do so. She also has given up walking long distances with her boyfriend. This is insufficient to show a substantial limitation with a major life activity. *Cf. Penny v. United Parcel Serv.,* 128 F.3d 408, 415 (6th Cir.1997) (walking with moderate difficulty or pain insufficient).

8. Whether "working" is still considered a major life activity is called into question by *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) ("there may be some conceptual difficulty in defining 'major life activities' to include work").

record looking for factual disputes,' it is not required to scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case.") (internal citation omitted).

Third, it is Plaintiff's burden to present sufficient evidence to identify how her impairment substantially limits her ability to work in a broad class of jobs. *See Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship*, 209 F.3d 678, 685 (7th Cir.2000). This she fails to do. She has withdrawn from full-time practice as an anesthesiologist, with its rigorous schedule and repetitive tasks, due to its exacerbation of her pain which would require her to take time off or to take more anti-inflammatory drugs than she is willing to take on a sustained basis. She has not sought any other kind of employment. As such, her evidence is to the effect that she cannot perform as a full-time anesthesiologist. The definition of major life activity is not to be interpreted to mean working at the specific job of one's choice.

Nor can it be reasonably inferred from the available evidence that she is so substantially limited that she cannot work a broad class of jobs.[9] Mere increased discomfort from working, such as Plaintiff alleges during cold weather, without a showing that it constitutes a substantial limitation on the ability to perform a broad class of jobs, is not a substantial limitation on the ability to work. *See Newton v. Signature Group*, 2000 WL 1016945, at *9 (N.D.Ill. July 20, 2000); *see, e.g., Aquinas v. Fed. Express Corp.*, 940 F.Supp. 73, 78 (S.D.N.Y.1996) ("even assuming that [plaintiff] suffers from a physical impairment that causes her considerable pain, discomfort and alteration of her activities, she is not 'disabled' within the meaning of the ADA"). Mere restrictions on repetitive motions have been found not to be substantially limiting. *See, e.g., Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 618 (8th Cir.1997) (restriction from performing jobs that require a substantial amount of sustained of repetitive motion and heavy lifting does not render plaintiff disabled); *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 373 (6th Cir. 1997) (plaintiff's carpal tunnel syndrome which restricted her from work involving repetitive motion was insufficient to establish that her condition disqualified her from a broad range of jobs); *Zarzycki v. United Techs. Corp.*, 30 F.Supp.2d 283, 286, 289–93 (D.Conn.1998) (plaintiff not significantly limited with respect to ability to work where physician restricted plaintiff from *inter alia* repetitive lifting or

---

9. The EEOC notes that the following factors should be considered in determining whether an individual is substantially limited in a major life activity:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2). When the major life activity in question is working, the EEOC notes that the following factors may also be considered:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes). 29 C.F.R. § 1630.2(j)(3)(ii).

bending); *Kirkendall v. United Parcel Serv., Inc.*, 964 F.Supp. 106, 110–11 (W.D.N.Y.1997) (no substantial limitation on any life activity, including ability to work, where doctors had advised plaintiff that frequent light lifting was not good for his back). A mere reduction in hours need not be a substantial limitation on the ability to work. *See Newton*, 2000 WL 1016945, at *9 (evidence that plaintiff could only work thirty hours per week was insufficient to show that he was precluded from a broad class of jobs). Furthermore, her evidence is not to the effect that she would have to reduce her hours "no matter what job [she] held." Rather, while she has offered some evidence of general physical limitations, she only offers evidence to the effect that she would have to limit her hours at a single job, a practicing anesthesiologist, a profession involving a rigorous schedule and repetitive tasks, and not at a broad range or a number of jobs, and not just the one.

## 2. Defendant did not regard Plaintiff as being substantially limited in one or more of her major life activities

■ Nor does Plaintiff satisfy the ADA definition of disability by being "regarded as having such an impairment." *See* 42 U.S.C. § 12102(2)(C). EEOC regulations, which are accorded weight in interpreting the ADA, provide three definitions of "regarded as disabled," only one of which is relevant here: a person is regarded as disabled if she "[h]as a physical or mental impairment that does not substantially limit a major life activity but is treated by the employer as constituting such a limitation." 29 C.F.R. § 1630.2(i). The employer "must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Sutton*, 527 U.S. at 489, 119 S.Ct. 2139; *see*

*Equal Employment Opportunity Comm'n v. R.J. Gallagher Co.*, 181 F.3d 645, 656 (5th Cir.1999) ("'[s]uch' an impairment means the same kind of impairment as would give rise to protection if it actually existed"). The Supreme Court noted the need for this kind of statutory protection when it wrote, "Such an impairment might not diminish a person's physical or mental capabilities, but could nevertheless substantially limit that person's ability to work as a result of the negative reaction of others to the impairment." *Sch. Bd. v. Arline*, 480 U.S. 273, 283, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) (discussing "regarded as" prong of the Rehabilitation Act). This is the crux of the statutory safeguard, to provide a remedy for individuals who are discriminated against by their employers who think them disabled and treat them inappropriately on that basis.

### a. Merely not offering her full-time work is insufficient to show that Defendant regarded Plaintiff as disabled

■ Plaintiff's essentially argues that since Defendant did not offer her a full five days per week employment with 24–hour call, it regarded her as disabled. Such evidence tends to show that Defendant believed Plaintiff could not perform the duties of an anesthesiologist on a full-time basis. It does not show that Defendant believed Plaintiff was substantially limited in one or more of her major life activities as defined by the EEOC regulations and thus was disabled. Plaintiff offers no evidence that Defendant believed she was substantially limited in major life activities such as caring for herself, performing manual tasks, walking, seeing, hearing, speaking, breathing, or learning. As for the major life activity of working, the inability to work in a specific job is not sufficient to constitute substantial impairment of a major life activity. *See infra* III.B.1. Plaintiff offers no evidence, nor can a rea-

sonable inference be drawn, that Defendant believed Plaintiff was substantially limited in working in a broad class of jobs. *See Sutton v. United Airlines, Inc.,* 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *Howard v. Navistar Int'l, Transp. Corp.,* 904 F.Supp. 922, 928–29 (E.D.Wis.1995). This is her burden, *cf. Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 872 (2d Cir.1998), and evidence only to the effect that Defendant does not believe her capable of work as a full-time anesthesiologist does not satisfy her burden. In contrast, the evidence points the other way. Defendant's offer of part-time work shows that it believed that Plaintiff was fully capable of performing the complex and critical tasks required of a practicing anesthesiologist, but only for less than a full work week.

### b. *Only offering her part-time work is insufficient to show that Defendant regarded Plaintiff as disabled*

Plaintiff also argues that when Defendant only offered her part-time work as an anesthesiologist, it constructively discharged her and that this together with Defendant's knowledge of her arthritic condition should be enough to defeat summary judgment as to this claim. For this proposition, Plaintiff rests on the Fifth Circuit case of *R.J. Gallagher Co.,* 181 F.3d 645. In *R.J. Gallagher Co.,* a plaintiff suffered from a form of blood cancer but was in complete remission. *Id.* at 648–49. Though this was known to the defendant, the defendant nonetheless demoted him within the company and reduced his pay. *Id.* at 649. The Fifth Circuit held that this was enough to defeat summary

judgment since this could have been a constructive discharge; therefore, "the presumption that [plaintiff] was not regarded as disabled dissolves." *Id.* at 657.

The Fifth Circuit's ADA analysis is rejected. The fourth element of a *prima facie* ADA claim is that a plaintiff suffer an adverse employment action because of his disability. *See Reeves,* 140 F.3d at 149–50. The Fifth Circuit analysis in *R.J. Gallagher Co.* would allow this fourth element to consume and replace the second element, that a plaintiff actually suffer from a disability within the meaning of the ADA.[10] Under the Fifth Circuit analysis, whenever there is some physical or mental impairment of which an employer has knowledge combined with an employee who has suffered some adverse employment action, the employee has satisfied both the fourth and hence second elements of his *prima facie* ADA claim.[11] The adverse employment action is argued to be a constructive discharge and together with the sense of impairment suffices to show that the employer may have "regarded" him as disabled. This legal analysis would excuse a plaintiff who has some impairment from showing that he is actually disabled; he would need merely to show that his employer has knowledge of the impairment, however non-limiting it is in fact, and an offer of less than full employment. As *R.J. Gallagher Co.* shows, one need not have essentially any impairment at all. *Id.* at 655 (Even though "the only actual present limitation claimed by [the plaintiff] was his need . . . for six monthly chemotherapy treatments," the Fifth Circuit "d[id] not doubt that" he "could follow this treatment

---

10. Likewise, being regarded as disabled would also satisfy the requirement to "be disabled within the meaning of the ADA."

11. Such a plaintiff must of course still show that his employer is subject to the ADA and

that he could perform the essential functions of his job with or without reasonable accommodation. *See Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 149–50 (2d Cir.1998).

schedule and still maintain his full workload.")

In *Tardie v. Rehabilitation Hospital,* 168 F.3d 538 (1st Cir.1999), a plaintiff who normally worked fifty to seventy hours per week suffered a heart impairment which forced her to cut back her hours to no more than forty per week. *Id.* at 540. Her employer knew of her condition and decided that she could not adequately perform her job in only forty hours per week. *Id.* It offered her an alternative position at reduced hours and declined to return her to her previous job. *Id.* The First Circuit upheld the district court's granting of summary judgment against her on the grounds that her employer did not regard her as disabled. *Id.* at 541–42. The facts of *Tardie* and the present case are strikingly similar. Both involve plaintiffs who initially voluntarily left their jobs for medical reasons; both employers had knowledge of the employee's condition; both employers decided not to restore the employee to her original position because they believed she was unable to work the full amount of hours; both can be argued to have constructively discharged her through offering her a different position, thus precluding her from the original position.

In contrast to *R.J. Gallagher Co.,* the First Circuit in *Tardie* found that an adverse employment action together with an employer's knowledge of the plaintiff's impairment was not enough to be considered "regarded as disabled." Indeed, in contrast to the plaintiff in *R.J. Gallagher Co.,* the plaintiff in *Tardie* actually suffered from a significant impairment and the employer admitted that her inability to work long hours, caused by her impairment, was the reason it denied her her old job. The First Circuit correctly looked to whether there was evidence that the employer believed that the impairment substantially limited her ability in one or more of her major life activities. *Id.*

In contrast to the analysis in *R.J. Gallagher Co.,* the second element of the *prima facie* case should have independent significance. To be regarded as disabled under a theory of constructive discharge, a plaintiff need show more that there is an impairment. A plaintiff must present sufficient evidence, apart from the adverse employment action, from which a reasonable inference could be drawn that the employer believes that the plaintiff actually has a physical or mental impairment that substantially limits one of more his major life activities. While this showing may be modest, it has substance nonetheless. Alternatively, sufficient evidence of an employer's *animus* towards disabilities plus sufficient evidence that an employer has knowledge of the physical or mental impairment plus a credible inference of constructive discharge can suffice to satisfy the second element of *prima facie* "regarded as disabled" ADA claim. *See, e.g., Arena v. Agip USA Inc.,* 2000 WL 264312, at \*7 (S.D.N.Y. Mar. 8, 2000).

Here Plaintiff puts forward no evidence that Defendant believes that she has a physical or mental impairment that substantially limits one of her major life activities. While working can be a major life activity, Plaintiff puts forward no evidence that Defendant believes her condition prevents her from working a broad class of jobs. *See Ryan,* 135 F.3d at 872; *infra* III.B.2.a. Her only evidence is to the effect that Defendant regarded her as unable to work for more than the limited time for which employment was offered, *i.e.,* as an anesthesiologist.

### C. ADEA (Count II)

*1. Plaintiff has established a prima facie case of federal age discrimination*

■ To establish a *prima facie* case under the Age Discrimination in Employ-

ment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, Plaintiff must put forward a reasonable basis for inferring discrimination by showing (1) that she was within the protected age group; (2) that she was qualified for the position; (3) that she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of age discrimination. *See Viola v. Philips Med. Sys.*, 42 F.3d 712, 716 (2d Cir.1994). Arguing she has failed to establish a *prima facie* case, Defendant makes several arguments which are all rejected. Her claim survives summary judgment.

### a. Plaintiff was within the protected age group

Plaintiff was 56 at the time the claim arose. This is not disputed. The protected age group for purposes of the ADEA is at least forty years old. 29 U.S.C. § 631(a).

### b. Plaintiff shows she was qualified for the position

As a preliminary matter, it is necessary to discuss the "position" in dispute. For almost twenty years, Plaintiff was a full-time anesthesiologist working for Defendant. It is undisputed that she is otherwise qualified as an anesthesiologist. She voluntarily left her job and stopped working entirely in the fall of 1997 for health reasons. Her employment agreement expired in early May 1998. Before her employment agreement lapsed, she sought a part-time position with Defendant. At different times in the discussions, the possible terms of the sought after part-time position varied in compensation and in duration, from as little as two days per week

to as much as six months per year with 24–hour call.

Defendant argues Plaintiff has failed to establish the second element of her *prima facie* case, that she was qualified for such part-time positions.[12] Defendant argues that there is no medical evidence that she was medically fit to undertake the half-time position, which was similar to that already offered to two other senior doctors. First, Plaintiff need not supply "medical" evidence to support her position; all she need supply is some reasonable evidence. Second, she has a letter from Dr. Markenson, one of her physicians, stating that, in his opinion, she is able to perform the duties and functions of an anesthesiologist working six months per year.

■ Defendant attacks this letter, asserting that it is suspect and unreliable. Plaintiff disputes this. Defendant asserts that Plaintiff dictated the letter, that Dr. Markenson has admitted he signed the letter because Plaintiff wanted him to, and that he was only consulting on Plaintiff's condition, not actively treating her. Such assertions merely create a factual issue. Defendant offered plaintiff a job, thus suggesting her qualification. Plaintiff satisfies this element of her *prima facie* case.

### c. Plaintiff suffered an adverse employment action

Against her ADA claim, Defendant argued that Plaintiff had not suffered an adverse employment action. But now in attacking Plaintiff's ADEA claim, Defendant does not make this same argument its memorandum of law. Furthermore, in its reply memorandum, it summarizes its arguments as to why Plaintiff has not estab-

---

**12.** Not reached is whether Plaintiff, by reason of her medical condition, is also "qualified" as a full-time anesthesiologist.

lished a *prima facie* case and in doing so fails to list lack of an adverse employment action as one of its reasons. However, Defendant does make thin reference in parts of its memoranda that Plaintiff has not shown an adverse employment action. Accordingly, Defendant is construed as having made the argument that it was not an adverse employment action when Plaintiff was not offered part-time work.[13] This court draws Defendant's arguments from its arguments against Plaintiff's ADA claim. They are all without merit. Plaintiff satisfies this element of her *prima facie* case.

Defendant argues that Plaintiff had no contractual right to a part-time agreement. That Plaintiff had no contractual right to such a part-time position, even if true, is irrelevant. To accept Defendant's argument would mean that it would never be an adverse employment action not to hire an at-will applicant on the basis of age since such an applicant would not have a contractual right to the job.

■ Defendant argues that it was under no duty to offer her a new, different position to accommodate her need for part-time work. Failure to hire someone on the basis of age is an adverse employment action. *See Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir.1989). For the same reason, failure to offer someone part-time employment may be an adverse employment action. *See Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 893 (7th Cir. 1996) (failure to re-hire in retaliation claim). Furthermore, Defendant's cases and legal theory are off-point. This is not a new, different position. Rather it is the same position, with reduced hours. Some jobs may not lend themselves to reducing hours. Here, however, Defendant was al-

ready willing to offer her a position as an anesthesiologist at two days per week.

Defendant argues it had no such part-time position open. However, on November 5, 1997, a few days after Plaintiff left her full-time position, Dr. Clark sent to Defendant's counsel a terms-sheet with a letter of instruction to draw up a half-time employment agreement for Plaintiff. It is dubious to assert now that it had no such positions open.

*d. Plaintiff shows that the adverse action occurred under circumstances giving rise to an inference of age discrimination*

■ Defendant argues that the circumstances in not offering Plaintiff a half-time position do not give rise to an inference of age discrimination. Its argument is without merit. In January 1998, about two months after Plaintiff went on leave, Defendant hired two younger anesthesiologists, aged 32 and 34, to begin work in the summer or fall of 1998 to replace the workload of Plaintiff and two other senior doctors who each went on half-time status. With this, Plaintiff satisfies this element of her *prima facie* case.

Defendant argues that the hiring of younger anesthesiologists is appropriate when looking for new anesthesiologists; it asserts that this was also the policy when Plaintiff was the group member in charge of Defendant. It also points out that the same decision-makers now accused of age *animus* had offered half-time positions to two other doctors, then aged 63 and 64, and hence both older than Plaintiff. Defendant's argument is misplaced. Plaintiff's burden at this stage is not to win the battle of evidence. She must merely put forward evidence that creates a reasonable

---

**13.** Not reached is whether Plaintiff also suffered an adverse employment action by not being offered full-time work as an anesthesiologist.

inference of age discrimination as to her. This she has done.

### 2. Defendant puts forward a legitimate non-discriminatory reason

Having established her *prima facie* case, the burden now shifts to Defendant to provide a legitimate non-discriminatory reason for not offering Plaintiff a part-time position. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (discussing race discrimination). It asserts that her own treating physicians would not certify her as fit to work the rigorous schedule required by a proposed half-time contract.[14]

### 3. Plaintiff puts forward evidence of pretext and age animus

Having put forward its legitimate non-discriminatory reason, the burden shifts back to Plaintiff to show (1) that the reason is false and (2) that discrimination was the real reason. *See St. Mary's Honor Ctr.*, 509 U.S. at 515–16, 113 S.Ct. 2742 (dictum); *but see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (*prima facie* case plus sufficient evidence that employer's justification is false may permit trier of fact to conclude employer unlawfully discriminated). Plaintiff need not prove this but must create a reasonable inference that it is so. *See Wittenberg v. Wheels, Inc.*, 963 F.Supp. 654, 663 n. 8 (N.D.Ill.1997). Her letter from Dr. Markenson, one of her physicians, states that she is able to perform the duties and functions of an anesthesiologist working six months per year. She also offers some evidence of age *animus* by Dr. Clark, who handled all the legal work and administrative work for Defendant. In response to

the question, "And why do you think that she shouldn't return to work after her disability leave?" Dr. Clark answered in his deposition in part, "She was acting tired. People felt it .... Other partners felt the support wasn't there. It's time to retire." Defendant responds that Dr. Clark was answering what he thought her state of mind was, not stating his own. Whether or not this is so is a question for a jury to decide.

### D. ADA Retaliation (Count III)

To establish a *prima facie* claim of retaliation under the ADA, Plaintiff must show (1) she was engaged in an activity protected by the ADA; (2) Defendant was aware of that activity; (3) an employment action adverse to Plaintiff; and (4) a causal connection between the protected activity and the adverse employment action. *See Sarno· v. Douglas Elliman–Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir.1999). She can maintain an ADA action for retaliation even if her underlying ADA claim does not succeed if she can establish a good-faith, reasonable belief that Defendant's actions, which gave rise to the original ADA claim, violated the law. *See id.* at 159; *see, e.g., Muller*, 187 F.3d 298 (upholding jury verdict of retaliation even though plaintiff was not an "individual with a disability" under the ADA). In order to defeat summary judgment, Plaintiff must make only a *de minimis* showing of the elements of her *prima facie* case. *See Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 444 (2d Cir. 1999).

### 1. Plaintiff shows participation in an protected activity

The first element of her *prima facie* case is not disputed. Plaintiff filed a complaint before the CHRO on June 11, 1998.

---

**14.** The distinction of "treating physicians" is relevant because Defendant argues that Dr.

Markenson, from whom she has letters about her ability to work, was not "treating" her.

2. *Plaintiff cannot satisfy that she suffered an adverse employment action caused by her engagement in a protected activity*

▮ Plaintiff cannot satisfy the third element of her *prima facie* case, that she suffered an adverse employment action, and accordingly, her claim is dismissed. In order for such an adverse employment action also to satisfy the fourth element of her *prima facie* case, that it was causally connected to the protected activity, such an adverse employment action must occur after June 11, 1998, when she filed her CHRO complaint.

Earlier when dealing with her ADEA claim, *see infra* III.C.1.c, Plaintiff was held to have shown an adverse employment action when Defendant failed to offer her a part-time position for which she was qualified and instead hired younger full-time anesthesiologists to in part replace her. This action, while sufficient to satisfy her *prima facie* ADEA discrimination claim, does not satisfy her *prima facie* ADA retaliation claim since it occurred before she filed CHRO complaint. Indeed, it was the basis for her CHRO complaint.

Plaintiff argues that Defendant committed an adverse employment action when it rescinded a part-time employment offer to her. Plaintiff argues that when she "accepted" Defendant's offer of part-time work (at two days per week) in a September 8, 1998 letter, Defendant retracted its offer. Plaintiff's argument is without merit. First, in her amended Local 9(c)(2) statement, Plaintiff concedes that she had rejected this offer more than three months earlier, before she filed her CHRO complaint on June 11, 1998. An offer, once

rejected, is terminated. RESTATEMENT (SECOND) OF CONTRACTS § 38(1). She offers no evidence that the offer was renewed. Therefore, she cannot now claim to have "accepted" Defendant's offer.

Second, no reasonable jury could find that Plaintiff's letter was a letter of acceptance. Assuming *arguendo* that Defendant's offer was still outstanding, her letter to Defendant was not one of acceptance. As it sought to increase the compensation from the original proposal, it would have been a counteroffer. A counteroffer rejects an offer. *See Ocean Ins. Co. v. Carrington*, 3 Conn. 357, 363 (1820); *Cavallo v. Lewis*, 1 Conn.App. 519, 521, 473 A.2d 338 (1984). Furthermore, her letter was an offer of settlement of the litigation already underway. No reasonable jury could construe it as otherwise.[15] The second paragraph begins (emphasis added), "Jim and I have discussed your client's proposal regarding *a resolution of this matter*." The second-to-last paragraph reads (emphasis added), "*As part of this resolution*, we will need to determine a figure for [Plaintiff's] income from May [1998] and she will want to be reimbursed for her attorneys' fees." No reasonable jury could construe this letter as acceptance of terms already offered.

Third, Defendant's "failure," after she filed her CHRO complaint, to offer her the same terms as the two other doctors cannot be construed as an adverse employment action. It cannot be said to have been caused by Plaintiff's protected activity since Defendant did not offer such terms to Plaintiff either before or after the filing of her CHRO complaint.[16] There-

---

15. Since this letter is a settlement communication between counsel, upon appropriate motion the letter would likely be inadmissible at trial. *See* FED. R. EVID. 408. As this letter is a necessary piece of evidence in her retalia-

tion theory, its inadmissibility would provide an independent basis for dismissing Plaintiff's retaliation claim.

16. Plaintiff concedes as much in her September 8, 1998 letter when she considers the

fore, such a "failure" is not an act of retaliation.[17]

### E. ADEA Retaliation (Count IV)

■ To establish a *prima facie* claim of retaliation under the ADEA, Plaintiff must show (1) she engaged in an activity protected under the ADEA; (2) Defendant was aware of her participation in the protected activity; (3) she was subjected to an adverse employment action; and (4) there is a nexus between the protected activity and the adverse action taken. *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir.1997). Her claim is dismissed for the same reason as in the ADA retaliation claim above, *see infra* III.D; she is unable to show an adverse employment action taken against her in response to the filing of her CHRO complaint.

### F. CFEPA Discrimination (Count V)

Plaintiff also brings state law claims under the Connecticut Fair Employment Practices Act ("CFEPA"), CONN. GEN. STAT. §§ 46a–58 to 46a–81.

#### 1. Plaintiff's state law age discrimination claim

In addition to her ADEA discrimination claim, Plaintiff also sues under the Connecticut age discrimination statute, CONN. GEN. STAT. § 46a–60(a)(1).[18] Defendant makes only one attack against her state claim, namely, that it should be dismissed for the same reasons as her ADEA claim.

But as her ADEA discrimination claim has survived summary judgment, *see infra* III.C, so too does her state age discrimination claim.

#### 2. Plaintiff's state law disability discrimination claim

■ In addition to her ADA discrimination claim, Plaintiff also brings a claim under the Connecticut disability discrimination statute, CONN. GEN. STAT. § 46a–60(a)(1).[19] In the absence of direct evidence of employment discrimination, when analyzing Connecticut courts are to employ the *McDonnell Douglas–Burdine* model of analysis. *See Ann Howard's Apricots Rest., Inc. v. Comm'n on Human Rights & Opportunities*, 237 Conn. 209, 224–25, 676 A.2d 844 (1996); *see also Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under Connecticut law, just as under the ADA, to establish a *prima facie* case of discrimination, Plaintiff must show (1) she was a member of a protected group; (2) she was qualified for the job; (3) she suffered an adverse employment decision; and (4) the adverse employment decision occurred under circumstances giving rise to a reasonable inference of discrimination. *See Feathers v. Vivisection Investigation League, Inc.*, 2000 WL 1340365, at *2 (Conn.Super.Ct. Aug. 31, 2000); *Gilman Bros. v. Conn. Comm'n on Human Rights & Opportuni-*

---

package offered to her so far as "far inferior" to that offered the other two part-time doctors.

**17.** The same is true for Defendant's "failure" to offer her full-time work. Whether or not she was qualified for such work, Defendant's "failure" to do so was the same before and after the filing of her CHRO complaint.

**18.** The relevant part of the statute provides, "It shall be a discriminatory practice ... [[]or an employer ... to refuse to hire or to bar or to discharge from employment any individual or to discriminate against him in terms, conditions or privileges of employment because of the individual's ... age ... or physical disability ...." CONN GEN. STAT. § 46a–60(a)(1).

**19.** *Id.*

*ties*, 1997 WL 275578, at *5 (Conn.Super.Ct. May 13, 1997).

### a. *Plaintiff shows she is actually disabled under the CFEPA and hence a member of a protected group*

To be "disabled" under Connecticut law is different from being "disabled" under the ADA. *See, e.g., Venclauskas v. State*, 1997 WL 375654 (Conn.Super.Ct. May 14, 1997). To be disabled under Connecticut law, one needs "any chronic physical handicap, infirmity or impairment ...." CONN. GEN. STAT. § 46a–51(15). Neither the state statute nor the ADA defines "chronic." Citing BLACK'S. LAW DICTIONARY 241–242 (6th ed.1990), the Connecticut superior court in *Gilman Brothers, supra* at 1997 WL 275578, *4, held reasonable the definition of "chronic" as "[w]ith reference to diseases, of long duration, or characterized by slowly progressive symptoms; deepseated or obstinate, or threatening a long continuance; distinguished from acute." In *Gilman Brothers*, a secretary's carpal tunnel syndrome was upheld as a chronic impairment. *Id.; see also Adriani v. Comm'n on Human Rights & Opportunities*, 220 Conn. 307,

314 n. 7, 596 A.2d 426 (1991) (hypertension found to be disability under CFEPA where plaintiff missed two weeks of work for medical leave).

Plaintiff suffers from severe arthritis in her hands elbows, knees, and feet.[20] Although disputed by Defendant, Plaintiff asserts that she has pain and decreased motion as well as swelling in her joints. She suffers pain and paresthesia while standing. Her condition caused her to be placed on full-time disability for about six months. Defendant asserts that it once heard she was undergoing mouth muscle spasms and in severe pain.[21] Once, she stopped gardening because it was too painful. She has given up walking long distances. This does not end the inquiry. With medication, Plaintiff contends that she might be able to work full-time as an anesthesiologist, although not for long periods of time. It is not clear whether the earlier noted conditions she ascribes to herself, pain and reduced joint motion and missing work for six months, are true when she is on the medication or if they are only true when she is off the medication.[22] As this is not clear from the

---

**20.** Plaintiff's assertion that her doctors consider her condition to be a chronic, degenerative, and progressive disease is misplaced. Her citations to her doctors' depositions do not support her assertion. What is more, even if her doctors were to conclude on the record that her condition is "chronic" in medical terms, while persuasive, such would not be dispositive of whether her condition is "chronic" for purposes of the state statute. Lastly, Plaintiff undercuts her own position, arguing at one point in support of her ADA retaliation claims that over the summer of 1998, "her abilities could only have gotten better with rest."

**21.** Other information attacks the credibility of this report.

**22.** The relevance is this. If she does not suffer these conditions when she is on her medication and she is able to take her medi-

cation such that she is not chronically handicapped, infirmed, or impaired then she would not be actually disabled under CONN GEN. STAT. § 46a–60(a)(1). Connecticut courts review federal precedent concerning employment discrimination for guidance in enforcing its own anti-discrimination statutes. *Levy v. Comm'n on Human Rights & Opportunities*, 236 Conn. 96, 103, 671 A.2d 349 (1996). The Supreme Court, in discussing the ADA, held, "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 482–83, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Therefore, if medication fully corrects her present condition, then she would not have a chronic handicap, infirmity, or impairment under CONN. GEN. STAT. § 46a–60(a)(1). This would not end the analysis

parties' submissions, the inference is resolved in Plaintiff's favor. Plaintiff has put forward sufficient evidence for the second element of her *prima facie* case.

#### b. Plaintiff shows that she was qualified for the job

For the same reasons as in her ADEA discrimination claim, *see infra* III.C.1.b, Plaintiff can show she was qualified as a part-time anesthesiologist.[23] She satisfies the second element of her *prima facie* case.

#### c. Plaintiff suffered an adverse employment action

For the same reasons as in her ADEA discrimination claim, *see infra* III.C.1.c, Plaintiff can show she suffered an adverse employment action by not being offered work as a part-time anesthesiologist.[24] She satisfies the third element of her *prima facie* case.

#### d. Plaintiff shows that the adverse action occurred under circumstances giving rise to an inference of disability discrimination

Defendant argues that the circumstances in not offering Plaintiff a half-time position do not give rise to an inference of disability discrimination. Its argument is without merit. In January 1998, about two months after Plaintiff went on full-time leave, Defendant hired two non-disabled anesthesiologists to begin work in the summer or fall of 1998 to replace the workload of Plaintiff and two other doctors who each went on half-time status. As she puts forward evidence that her adverse employment action occurred under circumstances giving rise to an inference of disability discrimination, Plaintiff satisfies the fourth element of her *prima facie* case.

#### e. Defendant puts forward a legitimate non-discriminatory reason

Having established her *prima facie* case, under *McDonnell Douglas–Burdine,* the burden shifts to Defendant to provide a legitimate non-discriminatory reason for not offering Plaintiff a part-time position. As in the ADEA discrimination claim, it asserts that her personal comments and her treating physicians indicated she was not capable of working the rigorous schedule required by a proposed half-time contract.

#### f. Plaintiff puts forward evidence of pretext and of a discriminatory motive

Having put forward its legitimate non-discriminatory reason, the burden shifts to Plaintiff to show that the reason is pretextual. Her letter from Dr. Markenson states that she is able to perform as an anesthesiologist working six months a year. Defendant admits that the offer extended to two older doctors to work half-time was originally intended to be available to any member of the group with the minimum years of service. When Plaintiff sought to avail herself of the half-time

---

though. Plaintiff's state disability discrimination claim might still survive if she could show that her employer "regarded" her as having a chronic handicap, infirmity, or impairment. CONN. GEN. STAT. § 46a–60(a)(1) was intended to be at least co-extensive with its federal statutory counterparts. *See Wroblewski v. Lexington Gardens, Inc.,* 188 Conn. 44, 53, 448 A.2d 801 (1982). For these reasons, Connecticut courts have held that the perceived disabilities are also protected under CONN. GEN STAT. § 46a–60(a)(1). *See, e.g., Comm'n on Human Rights & Opportunities ex rel. Tucker v. Gen. Dynamics Corp.,* 1991 WL 258041, at *6 (Conn.Super.Ct. Nov.22, 1991).

**23.** Not reached is whether Plaintiff, by reason of her medical condition, is also "qualified" as a full-time anesthesiologist.

**24.** Not reached is whether Plaintiff also suffered an adverse employment action by not being offered full-time work as an anesthesiologist.

policy, it was not made available to her. Defendant admits it did not believe she could handle the half-time schedule. Her claim survives summary judgment.

### G. CFEPA Retaliation (Count VI)

In addition to her ADA and ADEA retaliation claims, Plaintiff claims retaliation under Connecticut law, CONN. GEN. STAT. § 46a–60(a)(4).[25] Defendant makes the same attack on her state retaliation claim as on her federal retaliation claims. For the same reasons her federal retaliation claims were dismissed, see infra III.D, III.E, so too is her state retaliation claim.

### H. CFEPA Aiding and Abetting Discrimination (Count VII)

Plaintiff also claims under CONN. GEN. STAT. § 46a–60(5) that Defendant aided, abetted, compelled, and coerced discriminatory employment practices.[26] Defendant argues only that if the underlying discriminatory employment claim fails then necessarily so does this claim. As Plaintiff's age discrimination claims and state disability discrimination claim have survived summary judgment, Defendant's argument here fails. See infra III.C, III. F.1, III.F.2.

### I. Negligent Misrepresentation (Count VIII)

Under a claim of negligent misrepresentation, Defendant would be liable for Plaintiff's pecuniary loss caused by her justifiable reliance on false information supplied by Defendant in the course of its business, profession or employment to guide Plaintiff in her business transactions and if Defendant failed to exercise reasonable care or competence in obtaining or communicating the information. See D'Ulisse–Cupo v. Bd. of Dirs., 202 Conn. 206, 217–18, 520 A.2d 217 (1987). Plaintiff cannot show she justifiably relied on Defendant's representations, and accordingly her claim is dismissed.

■ Because of her arthritis, Plaintiff needed to take leave from her full-time position as an anesthesiologist. When she did so, in November 1997, she and Defendant, acting through Dr. Kalan, drafted a joint memoranda of understanding that she would return to work part-time the following February. Because of her condition, she did not return to work in February. The memorandum was to define the terms of her employment "pending a final contract."

Plaintiff points to this joint memorandum as negligent misrepresentation. She contends that relying on it, she did not seek a final contract with binding terms. This establishes a degree of reliance, that if she were able should would fulfill its terms. The memorandum specified a conditional solution to her employment status, "pending a final contract," and was dependent on her future health. Dr. Crowe, was at the time counseling her that she quite possibly would never be able to return to work. Since she was leaving work entirely for medical reasons, her ability to return to her work would necessarily have been

---

**25.** The relevant part of the statute provides, "It shall be a discriminatory practice ... [f]or [an] employer ... to discharge, expel or otherwise discriminate against any person because he has opposed any discriminatory employment practice or because he has filed a complaint or testified or assisted in any [applicable] proceeding ...." CONN. GEN. STAT. § 46a–60(a)(4).

**26.** The relevant part of the statute provides, "It shall be a discriminatory practice ... [f]or ... an employer ... to aid, abet, incite, compel or coerce the doing of an act declared to be a discriminatory employment act or to attempt to do so." CONN. GEN. STAT. § 46a–60(a)(5).

conditioned on her future health, something beyond the control of either party. Plaintiff herself recognized this at the time: "Not definitely in February[;] I was to find out how I was feeling" and "Plaintiff further admits that her return date was dependent on how she felt." Indeed, she did not return to work in February because of her arthritis, a changed state of fact, that contrary to the contemplations she was unable to perform her part of the conditional bargain, *i.e.*, return to work. Since the memorandum reflects future intentions, it can only be the basis for negligent misrepresentation if there was a present intent not to fulfill the promise. *See Paiva v. Vanech Heights Constr. Co.*, 159 Conn. 512, 515, 271 A.2d 69 (1970). Plaintiff offers no evidence of such a present malintent, not does she even conclusorily assert one in her opposition memorandum. Further, Defendant's non-performance, rather than evidence of an original intent not to perform, is tied to Plaintiff's inability to do so also.

## J. Negligent Infliction of Emotional Distress (Count IX)

■■■■ To maintain a claim for negligent infliction of emotional distress, Plaintiff must show that Defendant "should have realized that its conduct involved an unreasonable risk of causing [emotional] distress, and … that the distress, if it were caused, might result in illness or bodily harm." *See Montinieri v. S. New England Tel. Co.*, 175 Conn. 337, 341, 398 A.2d 1180 (1978). "Unreasonable" can include conduct performed in an "inconsiderate, humiliating, or embarrassing manner." *Skierkowski v. Creative Graphics Servs. Inc.*, 1995 WL 283945, at *5 (Conn.Super.Ct. May 5, 1995) (citation omitted). It is Defendant's conduct during the termination process, not the reason for terminating her employment, that must be shown to be unreasonable. *See Parsons v.*

*United Techs. Corp.*, 243 Conn. 66, 88–89, 700 A.2d 655 (1997) ("[t]he mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress").

There is an initial question of to what extent this tort is even applicable in an employment context where Defendant did not terminate Plaintiff, but rather Plaintiff left voluntarily and did not return before her employment agreement lapsed. This question is not reached as there are other flaws which lead to dismissal of this claim. Plaintiff offers few facts, none of which support her claim, which is thus dismissed.

■■■■ She first asserts that "[Defendant] falsely claimed that [Plaintiff] was not physically capable of performing the duties of an anesthesiologist. They never bothered to meet with her regarding their decision. Infact [sic], they never gave her the opportunity to talk with them about her physical abilities." That conduct cannot be said to be of the requisite quality. When Defendant claimed that Plaintiff could not perform as a full-time anesthesiologist, there was ample evidence, including Plaintiff's own representations and more than one medical opinion from her doctors, to this effect. As to not meeting with her regarding the decision, she offers no evidence that she sought to contact Defendant to discuss the issue. Both parties allowed all discussions to proceed through counsel.

She also asserts (citations omitted), "Defendant changed the locks of the office that Plaintiff had founded twenty years ago as if she was a criminal. Further still, Defendant forced her to be escorted by a security guard if [Plaintiff] visited the place she had founded." Changing the locks of a business to exclude non-employees and escorting visitors with whom it is engaged in

litigation, whether or not such a visitor co-founded the business, cannot be said to be unreasonable.

### K. Intentional Infliction of Emotional Distress (Count X)

 To maintain a claim for intentional infliction of emotional distress, Plaintiff must show (1) that Defendant intended to inflict emotional distress or that it knew or should have known that emotional distress was a likely result of its conduct; (2) that Defendant's conduct was extreme and outrageous; (3) that Defendant's conduct was the cause of Plaintiff's distress; and (4) that the emotional distress sustained by Plaintiff was severe. *See Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986). Plaintiff has made no showing that Defendant's conduct was extreme and outrageous, and this claim is dismissed.

Whether Defendant's conduct was extreme and outrageous is a question for the court. *See Bell v. Bd. of Educ.*, 55 Conn. App. 400, 409–10, 739 A.2d 321 (1999). The conduct must be "so atrocious as to exceed all bounds usually tolerated by decent society." *Appleton v. Bd. of Educ.*, 254 Conn. 205, 212, 757 A.2d 1059 (2000).

In her opposition memorandum, Plaintiff asserts, apart from legal citations and conclusory assertions less than a paragraph of facts to support her claim (citations omitted):

> Here, [Defendant] falsely claimed that [Plaintiff] was not physically capable of performing the duties of an anesthesiologist. They never bothered to meet with her regarding their decision. In fact [sic], they never gave her the opportunity to talk with them about her physical abilities. Further, Defendant changed the locks of the office that Plaintiff had founded twenty years ago as if she was a criminal. Further still, Defendant forced her to be escorted by

a security guard if [Plaintiff] visited the place she had founded.

Such conduct, assumed to be true, would not be so atrocious as to exceed all bounds usually tolerated by decent society and therefore cannot be extreme and outrageous.

## IV. CONCLUSION

Defendant's motion for summary judgment (Dkt. No. 26) is **denied in part** and **granted in part**. Counts I, III, IV, VI, VIII, IX, and X of Plaintiff's amended complaint (Dkt. No. 20) are dismissed.

SO ORDERED.