**Donald BEASON, Plaintiff,**

**v.**

**UNITED TECHNOLOGIES CORP., Hamilton Standard Division, Defendant.**

No. Civ.A. 3:97CV2654 (CFD).

United States District Court, D. Connecticut.

March 15, 2002.

Reconsideration Denied April 25, 2002.

Gregg D. Adler, Peter D. Goselin, Livington, Adler, Pulda, Meiklejohn & Kelly, Hartford, CT, for Plaintiff.

U.S. Court of Appeals, Office of the Clerk, New York City, Notice only.

Henry A. Platt, Gary L. Lieber, Schmeltzer, Aptaker & Shepard, Washington, DC, Edward J. Dempsey, Hartford, CT, for Defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

DRONEY, District Judge.

The plaintiff, Donald Beason, brings this action against his former employer, United Technologies Corporation, Hamilton Sundstrand Corporation, formerly Hamilton Standard Division ("Hamilton Standard"), alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn.Gen.Stat. 46a–51 *et seq.* Specifically, Beason claims that Hamilton Standard perceived him as disabled and discriminated against him on that basis when it did not recall him to work following a medical evaluation and report that placed restrictions on his ability to work. Hamilton Standard has filed a motion for summary judgment [Doc. # 40].

For the following reasons, Hamilton Standard's motion is GRANTED.

## I. *Background*[1]

Donald Beason ("Beason") began working at Hamilton Standard in December 1979. Beason was employed as a "Drill Press Operator" from 1979 until 1984, as a "Tooling and Material Expeditor" from 1984 to 1990, and thereafter as a "Shop Expeditor." In 1986, while a "Tooling and Material Expeditor," Beason was treated by a physician for a "systemic reaction to irritating fumes at work." Subsequently, while a "Shop Expeditor," Beason injured his right hand in a milling machine. The surgery to correct this injury resulted in the limited mobility of Beason's right thumb. In September 1992, a falling mirror struck Beason on the head, causing injury to various parts of his body, including his spine, back, and head. After this injury, Beason applied for, and received, workers' compensation benefits and took medical leave until he was laid off in March 1993, due to lack of work.

In October 1993, Beason's physician, Dr. Gary Belt, sent a letter to the defendant's medical department indicating that Beason had continued headaches and neck pain, was limited in performing tasks which

---

**1.** The following facts are based on the parties' Local Rule 9(c) Statements and other summary judgment papers and are undisputed unless otherwise indicated.

would require him to keep his neck extended or flexed for long periods of time, was limiting to lifting less than 25 pounds, and had reached a maximum level of medical improvement. On May 26, 1994 and August 12, 1994, pursuant to his claim for workers' compensation, Beason was examined by two doctors, Dr. Norman Kaplan and Dr. Stephen Selden. After examining Beason, Dr. Kaplan recommended Beason's employment be limited to sedentary work that allowed him to stand, sit, or stretch when he needed to, and did not involve lifting more than 25–30 pounds, the use of vibrating machinery, or standing for long periods of time. Dr. Selden, however, concluded after his examination that Beason was "capable of working, without any specific restrictions."

In September 1995, Hamilton Standard contacted Beason regarding his possible recall for the position of "Commuter Blade Worker," a job involving the production of commuter aircraft blades. Although the plaintiff had been working as a "Shop Expediter" at the time of his layoff in 1993, the "Commuter Blade Worker" position fell within the "Composite Technician III" job code, a job code in which his previous position had been incorporated under the Joint Enrichment Technology ("JET") program entered into by the defendant and its employees' union. Thus, Beason could be recalled to the "Commuter Blade Worker" position under the union's collective bargaining agreement. The "Composite Technician III" job code contains jobs that have a physical demand rating of 3, as they require sustained lifting up to forty pounds, occasional lifting of objects greater than forty pounds, and a "continuity of effort in exerting substantial force or pressure in the use of hand tools or equipment, or in holding objects which are generally light in weight against a rotating surface with a resulting jarring transmitted through the arms or body."

To determine his eligibility for recall, Beason was instructed to report to Hamilton Standard's medical center for a medical evaluation. On September 26, 1995, the staff of defendant's on-site medical center asked Beason to fill out a "Preplacement Assessment Examination" regarding his medical history[2] and gave him a physical examination, including blood, hearing, urine, and pulmonary function tests. Beason also underwent an assessment by a physical therapist, Joanne Sanborn, and an interview with the director of the defendant's on-site medical center, Dr. Walter Wiechetek ("Dr.Wick"). Based on her examination of Beason's neck, back, and legs, Sanborn did not recommend any restrictions on Beason's employment. Dr. Wick, however, based on his interview of Beason and his review of Beason's "Preplacement Assessment Examination," Sanborn's physical therapy assessment, and Beason's prior medical history,[3] recommended Beason's work be limited to a sedentary job that allowed him to change positions frequently and did not involve lifting more than 25–30 pounds, the use of vibrating machinery, the use of heavy machinery after taking medicine, or the prolonged exposure to chemical fumes. Dr.

---

2. In this questionnaire, Beason indicated that he never had frequent headaches, surgical procedures, loss of consciousness, or difficulty maintaining a position due to a medical condition and never received a pension, disability payment or award from the state or federal government. Beason later testified that such answers were due to misunderstandings of the questions.

3. The parties dispute what information Dr. Wick had about Beason's prior medical history, but the Court views the evidence presented, as it must when dealing with a motion for summary judgment, in a light most favorable to Beason, i.e., that Dr. Wick had all of Beason's prior medical history, including the 1994 evaluations by Dr. Kaplan and Dr. Selden.

Wick thereafter drafted a "Medical Placement Record" ("MPR") setting forth those restrictions. After reviewing Beason's MPR and speaking with the medical center staff, Richard Scorzafava, the supervisor for the "Commuter Blade Worker" position, determined that Beason could not be recalled to the position. Hamilton Standard then contacted Beason and informed him that he was not being recalled to work because of his medical restrictions. Beason subsequently provided Hamilton Standard with a note from Dr. Kaplan stating that Beason could return to work without any medical restrictions, but Hamilton Standard refused to recall him nevertheless.

On November 1, 1995, Beason's union filed a grievance for him and four other Hamilton Standard employees who were not recalled to work, alleging that Hamilton Standard violated the non-discrimination clause contained in the union's collective bargaining agreement. The grievance was submitted to arbitration in July 1996, in accordance with the arbitration provisions of the collective bargaining agreement. In October 1996, the arbitrator denied the Union's grievance and found that Hamilton Standard had not violated the ADA. While the grievance was pending, Beason filed a charge of disability discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission. A CHRO investigation concluded that there was reasonable cause to believe that Beason had been discriminated against by Hamilton Standard in violation of the ADA and the CFEPA by failing to recall him to work. Beason then filed this action.

After filing its answer and affirmative defenses to Beason's complaint, Hamilton Standard moved for judgment on the pleadings, arguing that Beason's complaint must be dismissed because he was re-quired to arbitrate his employment discrimination claims in accordance with the mandatory grievance and arbitration procedures set forth in the collective bargaining agreement. Hamilton Standard also argued that Beason's claims were barred by the prior decision of the arbitrator which denied Beason's grievance. The Court denied the motion to for judgment on the pleadings, and the defendant filed the instant motion for summary judgment on the merits of Beason's ADA and CFEPA claims.

## II. Summary Judgment Standard

In the context of a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Miner v. City of Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993) (internal quotation marks and citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248, 106 S.Ct. 2505, but omitting internal quotation marks), cert. denied, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S.

317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"The nonmovant must do more than present evidence that is merely colorable, conclusory, or speculative and must present 'concrete evidence from which a reasonable juror could return a verdict in his favor.'" *Alteri v. General Motors Corp.*, 919 F.Supp. 92, 94–95 (N.D.N.Y.1996) (quoting *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505). A party may not create its own "genuine" issue of fact simply by presenting contradictory or unsupported statements. *See Securities & Exch. Comm'n v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978). When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact." *Soto v. Meachum*, Civ. No. B–90–270 (WWE), 1991 WL 218481, at *6 (D.Conn. Aug. 28, 1991).

In ruling on a motion for summary judgment, the Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992).

III. *Discussion*

A. *ADA Claim*

Title I of the ADA provides that no covered entity, including private employers, shall discriminate against a qualified individual with a disability because of the disability of such individual. *See Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68 (2d Cir.1999). In analyzing a discrimination claim under the ADA, the Court must apply the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

> Under *McDonnell Douglas*, [a] plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. The burden of production then shifts to [the] defendants, who must offer through the introduction of admissible evidence a nondiscriminatory reason for their actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the disputed employment action. [The][p]laintiff then must show that the proffered reason was merely a pretext for discrimination, which may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more.

*Heyman*, 198 F.3d at 72 (internal quotation marks, alterations, and citations omitted); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The defendant in this case argues that summary judgment is appropriate because (1) Beason has failed to establish a prima facie case of disability discrimination; and (2) Beason has failed to show that the defendant's legitimate non-discriminatory reason for not recalling Beason to work was really a pretext for disability discrimination. Beason opposes summary judgment, arguing that there are genuine issues of material fact as to whether the defendant perceived him as disabled and

discriminated against him on that basis by failing to recall him to work.

■ To establish a prima facie case of discrimination under the ADA, Beason must show by a preponderance of the evidence that (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *See Heyman*, 198 F.3d at 72. The parties in this case do not dispute that the defendant is subject to the ADA. However, they dispute whether Beason was disabled within the meaning of the ADA, whether he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation, and whether he suffered an adverse employment action because of his disability.

Under the ADA, "disability" is defined as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Beason denies that he has a physical or mental impairment that substantially limits a major life activity, but claims that the defendant perceived him as having such and discriminated against him on that basis when it failed to recall him to work. Accordingly, in order to make his prima facie case of disability discrimination, Beason must show that he was regarded as having a physical or mental impairment that substantially limits one or more major life activities. *See* 42 U.S.C. §§ 12102(2)(C), (A).

There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistak-enly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting. These misperceptions often result from stereotypic assumptions not truly indicative of individual ability. *See* 42 U.S.C. § 12101(7).

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (internal quotation marks, alterations, and citations omitted).

Beason claims that the defendant regarded him as having a physical impairment. According to the EEOC regulations, a "physical impairment" includes:

Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.

29 C.F.R. § 1630.2(h)(1); *see Francis v. City of Meriden*, 129 F.3d 281, 283 n. 1 (2d Cir.1997) (stating in regard to EEOC regulations defining "disability" under the ADA, "[w]e accord great deference to the EEOC's interpretation of the ADA"); *see also Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 563 n. 10, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999) ("[W]e assume, without deciding, that [the regulations and interpretive guidance promulgated by the

EEOC relating to the ADA's definitional section] are valid."); *but see Sutton,* 527 U.S. at 479–80, 119 S.Ct. 2139 (assuming without deciding that EEOC regulations defining disability under ADA are valid, but noting that the EEOC has not been given authority to issue regulations defining disability under ADA). In light of the evidence presented regarding Beason's injuries and the injuries' effects on Beason, the defendant's knowledge of the injuries and its effects, and the defendant's decision not to recall him based on his medical history and the medical restrictions Dr. Wick recommended for Beason, the Court finds that a reasonable juror could find that the defendants regarded Beason as suffering from a "physical impairment."

■ The Court's inquiry does not end there, however. The evidence presented by Beason must also show that there is a genuine issue of material fact whether the defendant regarded Beason as suffering from a physical impairment that *substantially limits one or more major life activities.* Beason asserts that the defendant perceived his impairment to substantially limit the activities of standing, walking, lifting, carrying, and working[4]. The Second Circuit has recognized that walking and working are major life activities, and has assumed, without deciding, that standing and lifting are also major life activities. *See Colwell v. Suffolk Cty. Police Dep't.,* 158 F.3d 635, 642 (2d Cir.1998). In light of the foregoing, the Court assumes, without deciding, that carrying is also a major life activity. *See Piascyk v. New Haven,* 64 F.Supp.2d 19, 26 (D.Conn.1999), *aff'd.* 216 F.3d 1072 (2d Cir.2000).

The Court must next determine whether the defendant perceived Beason's impair-

ment as "substantially limiting" any of these major life activities. *See Colwell,* 158 F.3d at 643. "The ADA does not define 'substantially limits,' but 'substantially' suggests 'considerable' or 'specified to a large degree.'" *Sutton,* 527 U.S. at 491, 119 S.Ct. 2139. The EEOC regulations define "substantially limited" as:

(I) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). "The regulations recommend that the following factors be considered in determining whether an individual is substantially limited in a major life activity: '(I) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.' 29 C.F.R. § 1630(j)(2)." *Colwell,* 158 F.3d at 643 (using EEOC regulations to interpret "substantially limits"). The Court should compare the perceived impaired ability to perform the major life activities with the "average person's ability to perform those activities." *Colwell,* 158 F.3d at 643.

Beason's support for his allegation that the defendant perceived him as disabled consists of evidence that the decision not to recall him was based on Dr. Wick's

---

4. Although Beason originally also claimed that the defendant perceived him as substantially limited in the major life activity of breathing, he abandons this claim in his opposition to the defendant's motion for sum-

mary judgment, as he concedes that, even if the defendant had such a perception, it was not relied upon by the defendant in its decision not to recall Beason.

report indicating Beason required certain medical restrictions, which was arrived at based on, *inter alia,* review of Beason's medical history, including the 1994 evaluations by Dr. Kaplan and Dr. Selden. In accordance with the above framework, however, the Court concludes that, even assuming the defendant perceived Beason as his prior medical history and Dr. Wick's report portrayed him—an individual who was unable to perform other than sedentary work, lift more than twenty-five pounds, stand for longer than two hours, use vibrating or heavy machinery, or be exposed to chemical fumes—a reasonable juror could not find that the defendant perceived him as substantially limited in the major life activities of walking, standing, lifting, carrying, or working. Each activity is examined below.

1. *Walking*

■ Examined in a light most favorable to Beason, his evidence suggests that, in light of the medical information Dr. Wick had about Beason and the restrictions Dr. Wick ultimately imposed on Beason, the defendant could have perceived Beason's ability to walk was limited to the extent that he "gets numbness into his toes on both sides," has "significant pain when turning to the right," and can only perform "sedentary work" with "the ability to change positions frequently." However, while this evidence suggests that the defendant may have perceived Beason as restricted in his ability to walk, the evidence does not indicate that the defendant perceived him as substantially limited in that regard. *See Piascyk,* 64 F.Supp.2d at 28 (holding that plaintiff's twenty percent impairment of right ankle, ten percent impairment of back, difficulty climbing stairs, marked limp, constant moderate pain in right ankle, periodic need to wear air cast, and inability to walk more than half a mile did not indicate substantial limitation in the ability to walk); *Kelly v. Drexel Univ.,*

94 F.3d 102, 106 (3d Cir.1996) (holding that plaintiff with severe post-traumatic hip impairment who could not walk more than a mile, could not jog, had to use a hand rail and pace himself when ascending stairs, and had difficulty walking around was not substantially limited in his ability to walk). To perceive one as substantially limited is more than to believe him to be restricted in some way. The evidence must be sufficient for a fact finder to reasonably conclude that the defendant regarded "the nature and severity of [Beason's] injury [to] significantly restrict[ ] his ability to walk as compared with an average person in the general population." *Piascyk,* 64 F.Supp.2d at 28 (internal quotation marks omitted). That is not the case here.

2. *Standing*

With regard to standing, and viewing the evidence in a light most favorable to Beason, the defendant could have perceived that Beason was unable to stand for longer than two hours, could only perform sedentary work, and could not perform tasks which would require him to keep his neck extended or flexed for long periods of time. Nonetheless, the Court holds that this does not amount to a perception of him as substantially limited in the major life activity of standing. A belief that one cannot stand for longer than two hours, can only perform sedentary work, and has difficulty keeping his next extended or flexed for long periods of time does not constitute a belief that one is severely restricted in his ability to stand as compared with the average person. *See Colwell,* 158 F.3d at 643–45 (difficulty standing "at attention" for "any period of time," standing "in one spot," standing "for a long period of time," and need to perform sedentary work does not indicate substantial limitation in the ability to stand): *Hopkins v. Digital Equip. Corp.,* 1998 WL 702339 (S.D.N.Y. Oct. 7, 1998) (doctor's

conclusion that plaintiff cannot stand for a prolonged period does not establish an impairment that would substantially limit a major life activity). The nature and severity of such a limitation does not connote a substantial deviation from the ability of the average person to stand. Accordingly, Beason has failed to create a genuine issue of material fact that the defendant perceived him as substantially limited in the activity of standing.

### 3. Lifting and Carrying

With regard to lifting and carrying, again viewing the evidence in a light most favorable to Beason, the defendant could have perceived that Beason's injuries left him with an inability to lift more than twenty-five pounds. The Court holds, however, that this does not amount to a perception of him as substantially limited in the major life activities of lifting or carrying. While a belief that one cannot lift more than twenty-five pounds connotes a perception of that person as hindered in the activity of lifting, it does not constitute a belief that one is severely restricted in his ability to lift or carry as compared with the average person. See *Colwell*, 158 F.3d at 644 (evidence that plaintiff could lift only light objects of ten to twenty pounds infrequently was not sufficient to establish that plaintiff suffered a substantial limitation on his ability to lift); *Sherrod v. American Airlines*, 132 F.3d 1112, 1120 (5th Cir.1998) (restriction to lifting forty-five pounds occasionally and twenty pounds frequently does not establish substantial limitation in ability to lift, but merely indicates a limitation in *"heavy* lifting"); *Helfter v. United Parcel Serv.*, 115 F.3d 613, 617 (8th Cir.1997) (evidence that plaintiff could not lift more than ten pounds frequently or twenty pounds occa-

sionally did not raise genuine issue of material fact on whether her impairments imposed substantial limitations on any major life activity), *Thompson v. Holy Family Hosp.*, 121 F.3d 537, 539–40 (9th Cir. 1997) (inability to lift more than twenty-five pounds frequently, more than fifty pounds twice a day, or more than one-hundred pounds once a day does not constitute a substantial limitation on any major life activity): *Aucutt v. Six Flags Over Mid–America, Inc.*, 85 F.3d 1311, 1319 (8th Cir.1996) (twenty-five pound lifting restriction did not significantly restrict major life activities;) *Kirkendall v. United Parcel Serv.*, 964 F.Supp. 106, 111 (W.D.N.Y.1997) (thirty pound lifting restriction was not substantial limitation on lifting or any other major life activity). Beason must show that his limitations in his ability to lift and carry were perceived as "substantial, not amounting to only a mere difference in conditions, manner or duration" as compared to the average person. *Bartlett v. New York State Board of Law Examiners*, 226 F.3d 69, 80 (2d Cir. 2000). As he has not done so, Beason has failed to create a genuine issue of material fact that the defendant perceived him as substantially limited in the activities of lifting or carrying.

### 4. Working

■ Beason also claims that the defendant perceived his impairment as substantially limiting his ability to work.[5] As the Supreme Court has made clear, "[w]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton*, 527 U.S. at 491, 119 S.Ct. 2139. The

**5.** *Sutton* assumed without deciding that working is a major life activity for purposes of the ADA, but indicated that "there may be some

conceptual difficulty in defining 'major life activities' to include work." 527 U.S. at 492, 119 S.Ct. 2139.

EEOC has defined the term "substantially limits" as it applies to the major life activity of working as:

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(I). Accordingly, to prevail on his claim that he was perceived as substantially limited in the major life activity of working, Beason must show he was regarded as "precluded from more than one type of job, a specialized job, or a particular job of choice." *Sutton,* 527 U.S. at 492, 119 S.Ct. 2139. The EEOC directs a court to consider "the number and types of jobs utilizing similar training, knowledge, skills or abilities, within the geographical area, from which the individual is also disqualified." 29 C.F.R. §§ 1630.2(j)(3)(ii)(A), (B). The Interpretive Guidance for the regulations adds that:

> [t]he terms "number and types of jobs" ... as used in the factors discussed above, are not intended to require an onerous evidentiary showing. Rather, the terms only require the presentation of evidence of general employment demographics and/or of recognized occupational classifications that indicate the approximate number of jobs (e.g., "few," "many," "most") from which an individual would be excluded because of an impairment.

Interpretive Guidance on Title I of the Americans with Disabilities Act, 28 C.F.R. pt. 1630 app. § 1630.2(j).

To support this claim, Beason has presented evidence that the defendant decided not to recall him to the position of "Commuter Blade Worker" in light of medical restrictions suggested by Dr. Wick. Beason has also presented evidence that the "Commuter Blade Worker" position is classified within the "Composite Technician III" job code, a code within which twenty-nine other positions with a physical demand rating of "3" are included. Beason has also provided the Court with a list of thirty-two other job codes containing positions with a physical demand rating of "3." The defendant argues that the plaintiff was only considered for the "Commuter Blade Worker" position in the "Composite Technician III" job code, and thus, was only perceived as unable to perform one job, rather than a class of jobs. Viewing the evidence in the light most favorable to Beason, however, the Court finds that a reasonable juror could find that Dr. Wick's findings regarding Beason's limitations would eliminate Beason from working at *any* position at Hamilton Standard with a physical demand rating of "3."[6] It is undisputed that such positions require sustained lifting up to forty pounds, occasional lifting of objects greater than forty pounds, and a "continuity of effort in exerting substantial force or pressure in the use of hand tools or equipment, or in holding objects which are generally light in weight against a rotating surface with a resulting jarring transmitted through the arms or body." Thus, any position with a

---

**6.** The parties dispute whether the defendant could have considered Beason for any position with a physical demand rating of "3" outside of the "Composite Technician III" job code without union consent. *See* Bond Aff. at ¶ 10. However, the Court finds that this does not create a genuine issue of material fact, because, even assuming the defendant could have placed Beason in any position with a physical demand rating of "3", Beason has not established that the group of positions with a physical demand rating of "3" constitutes a broad class of jobs.

physical demand rating of "3" would require physical abilities which the defendant allegedly perceived Beason to lack. Accordingly, a reasonable juror could find that the defendant perceived Beason as unable to perform any of those positions.

The question thus becomes whether the category of jobs involving lifting more than twenty-five to thirty pounds and the use of vibrating or heavy machinery, classified at Hamilton Standard as positions with a physical demand rating of "3," is broad enough to "substantially limit" the major life activity of working.

Courts have interpreted a "broad range of jobs" or "broad class of jobs" to require a showing of "a wide range of employment options within the employee's field." *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 724 (2d Cir.1994) (citing *Cook v. Rhode Island*, 10 F.3d 17, 25 (1st Cir.1993)). For example, in *Sutton*, the Supreme Court held that the respondent's alleged perception that the petitioners' poor vision precluded the petitioners from holding positions as "global airline pilots" did not support the claim that the respondent regarded the petitioners as substantially limited in a broad class of jobs. *Sutton*, 527 U.S. at 493–94, 119 S.Ct. 2139. In *Murphy*, the Court held that the plaintiff's evidence that he was regarded as unable to drive a commercial motor vehicle did not establish that he was regarded as "unable to perform a class of jobs utilizing his skills." *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 524, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999). At most, held the Court, "petitioner has shown that he is regarded as unable to perform the job of mechanic only when that job requires driving a commercial motor vehicle.... Petitioner has put forward no evidence that he is regarded as unable to perform any mechanic job that does not call for driving a commercial motor vehicle...." *Id.*

The Second Circuit has defined the requirement of a "broad class of jobs" as broadly. In *Heilweil*, the Second Circuit held that an individual who established that her asthma prevented her from maintaining employment as a blood bank administrator at a certain hospital facility did not establish she was substantially limited in the major life activity of working because her evidence did not "suggest[ ] plaintiff's education and previous job experiences would hinder her ability to find a suitable position in the general field of administration." *Heilweil*, 32 F.3d at 724. In *Colwell*, the Second Circuit held that evidence of police officers' inability to perform physically confrontational work did not establish that they were substantially limited from a broad range of jobs, or that they were regarded as such. *See Colwell*, 158 F.3d at 644, 647 ("[C]ontinuous assignment of [policemen] to non-confrontational positions does not permit the inference that the officers were regarded as *substantially limited* in their ability to do work.... The fact that the officers were believed to be unable to wrestle with disturbers of the peace is not enough."). Similarly, in *Giordano v. New York*, 274 F.3d 740, 749–50 (2d Cir.2001), the Second Circuit held that a police department's perception of an officer as unable to perform "police or other investigative or security jobs that involve a substantial risk of physical confrontation" did not indicate a perception of such officer as substantially limited in a broad class of jobs. The court pointed out that the record "contains no evidence from which we can infer that the defendants thought, or had grounds for thinking, that other jobs in the public or private sector—such as, for example, a job as a security guard or a private investigator, or with a police department that does not require every officer to be capable of patrol duty—carry the same nature or degree of risk." *Id.* at 749.

Other Circuits have required similar evidentiary thresholds to establish a limitation, or perceived limitation, from performing a "class" or "broad range" of jobs. *See Davis v. University of North Carolina*, 263 F.3d 95, 100 (4th Cir.2001) (finding that plaintiff's evidence of a perceived inability to perform teaching jobs or jobs that require unsupervised contact with children did not establish a perceived inability to perform a class or broad range of jobs), *Duncan v. Washington Metropolitan Area Transit Authority*, 240 F.3d 1110, 1115 (D.C.Cir.2001) (affirming grant of summary judgment where plaintiff's evidence established "little or nothing ... about the number and types of jobs in the Washington, D.C. area for which [he] is qualified and which are therefore available to him," though evidence established that plaintiff's back injury prevented him from lifting more than 20 pounds or returning to his former position as a custodian); *Helfter*, 115 F.3d at 618 (plaintiff's evidence of restriction from "performing jobs that require a substantial amount of sustained repetitive motion and heavy lifting" failed to establish that impairment rendered her unable to perform a class or broad range of jobs).

Indeed, when courts have found a substantial limitation in the major life activity of working, the class or range of jobs has been quite broad. In *Deane v. Pocono Medical Center*, 142 F.3d 138 (3d Cir. 1998), the Third Circuit reversed a district court's grant of summary judgment on the issue of a perceived limitation in the major life activity of working, where the plaintiff had submitted expert testimony indicating that the plaintiff was perceived as precluded from performing:

> not only many of the available jobs in service-producing industries, (including transportation, wholesale/retail, finance, real estate, hospitality industries, medical services, and professional services), which made up 83% of the 41,000 non-agricultural jobs in [the plaintiff's] county of residence, but also most of the jobs in the goods-producing industries (contract construction, mining, and manufacturing), which comprised the remaining 17% of available positions.

*Deane*, 142 F.3d at 145. Similarly, in *Milner v. Henderson*, No. 99–6264, 2000 WL 964768, at *1, 225 F.3d 646 (2d Cir.2000), the Second Circuit reversed a grant of summary judgment where the plaintiff provided evidence of his inability to perform work in the "semi-skilled and skilled manual laborer classes of jobs for which his prior experience and education qualify him." *Id.* at *1, 225 F.3d 646. Likewise, this Court found a genuine issue of material fact as to discrimination based on a perceived disability where the plaintiff presented evidence of a perception that the plaintiff's impairment precluded him from "any job involving any degree of physical exertion." *Equal Employment Opportunity Comm'n v. Blue Cross Blue Shield*, 30 F.Supp.2d 296, 305 (D.Conn.1998) (Goettel, J.).

In light of the statutory framework and relevant precedent, the Court concludes that Beason has not established that he was perceived as substantially limited in the major life activity of working. Beason has not presented sufficient evidence that the defendant perceived Beason's impairment to substantially limit his ability to perform a "number of jobs utilizing similar training, knowledge, skills or abilities, within the geographical area [to which he has reasonable access]." 29 C.F.R. §§ 1630.2(j)(3)(ii)(A), (B); *Sutton*, 527 U.S. at 492, 119 S.Ct. 2139. While his evidence may suggest a perception that he is unable to perform work that involves heavy lifting, much moving around, or the use of heavy or vibrating machinery, he has not presented sufficient evidence that he was regarded as unable to perform technical or mechanical work that may have also been

within his abilities or qualifications, but that did not require a high physical demand. Beason's evidence parallels that presented by one of the plaintiffs in *Colwell*, where the Second Circuit found the plaintiff's evidence of an inability to lift objects of more than twenty pounds, stand or walk for more than half an hour to an hour, and a need to get up and change position frequently established that his "impairment disqualifies him from only a narrow range of jobs (those involving physical confrontation) and thus his impairment is not a substantially limiting one." *Colwell*, 158 F.3d at 644 (internal quotation marks omitted); *see also Zarzycki v. United Technologies Corp.*, 30 F.Supp.2d 283, 293–95 (D.Conn.1998).

Moreover, Beason has presented no evidence of the specific job market in the geographic area to which he had reasonable access by which a reasonable juror could conclude that he was perceived as substantially limited in his ability to perform a broad range or class of jobs. He has presented no evidence of the "general employment demographics and/or of recognized occupational classifications" to indicate that he was perceived as precluded from performing a broad range or class of jobs in the geographic area to which he had access and which required similar abilities and qualifications.

Finally, simply listing the numerous job codes at Hamilton Standard which have a physical demand rating of "3" is insufficient to raise a genuine issue of material fact as to whether Beason was regarded as unable to perform a broad range or class of jobs. No evidence has been presented as to the actual number of positions which were filled; no evidence has been presented as to the different—or similar—nature of those positions and their duties, other than their titles; and no evidence has been presented as to how those positions compare with employment opportunities outside of Hamilton Standard.

Accordingly, the Court concludes that Beason has not presented sufficient evidence by which a trier of fact could reasonably find that he has a disability under prong (C) of 42 U.S.C. § 12102(2). Thus, Beason has failed to establish a prima facie case of discrimination, and the defendant's motion for summary judgment is thus GRANTED as to Beason's ADA claim.[7]

### B. *CFEPA Claim*

While Beason brings his claim under both Conn.Gen.Stat. § 46a–58(a) and § 46a–60(a)(1), the Connecticut Supreme Court has held that Conn.Gen.Stat. § 46a–58(a) "provides no basis for claims of discriminatory employment practices that fall within the scope of § 46a–60." *Commission on Human Rights & Opportunities v. Truelove & Maclean*, 238 Conn. 337, 680 A.2d 1261, 1267–68 (1996). Accordingly, summary judgment is GRANTED as to Beason's claim under § 46a–58(a).

Connecticut courts have recognized a cause of action under Conn.Gen.Stat. § 46a–60(a)(1) for persons who have been discriminated based on the "perception" of a disability, rather than an actual disability. *See Shaw v. Greenwich Anesthesiology Assocs., P.C*, 137 F.Supp.2d 48, 66 n. 22 (D.Conn.2001) (citing *Commission on Human Rights & Opportunities ex. rel. Tucker v. Gen. Dynamics Corp.*, No. 517054, 1991 WL 258041, at *6 (Conn.Super.Ct. Nov. 22, 1991)). Federal law concerning

---

**7.** Accordingly, the Court need not reach the defendant's further claims that Beason was not "otherwise qualified" for the position of "Commuter Blade Worker", that Beason was not subjected to an adverse employment action because of his disability, and that it has articulated a legitimate non-discriminatory reason why the alleged action was taken, which Beason cannot prove is pretextual.

employment discrimination guides the enforcement of Connecticut's anti-discrimination statutes. *See Levy v. Commission on Human Rights & Opportunities,* 236 Conn. 96, 671 A.2d 349, 355 (1996). Accordingly, as the facts underlying Beason's CFEPA claim are the same as his ADA claim, the defendant's motion for summary judgment on Beason's CFEPA claim is also GRANTED.

## IV.  *Conclusion*

As the Court finds that Beason has not adduced sufficient evidence from which a reasonable juror could find discrimination under the ADA or CFEPA, the defendant's motion for summary judgment [Doc. # 40] is GRANTED.

The Clerk is directed to close the case.