Donald BEASON, Plaintiff–Appellant,

v.

UNITED TECHNOLOGIES CORPORATION, Hamilton Standard Division, Defendant–Appellee.

Docket No. 02–7425.

United States Court of Appeals, Second Circuit.

Argued Dec. 2, 2002.

Decided July 21, 2003.

---

Peter Goselin, Hartford, Connecticut (Gregg D. Adler, Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C., Hartford, Connecticut, of counsel), for Plaintiff–Appellant.

Henry A. Platt, Washington, D.C. (Anessa Abrams, Schmeltzer, Aptaker & Shepard, P.C., Washington, D.C.; Edward J. Dempsey, Labor Counsel, United Technol-

ogies Corporation, Hartford, Connecticut, of counsel), for Defendant–Appellee.

Charles Krich, Hartford, Connecticut (Philip A. Murphy, Jr., Commission Counsel, Connecticut Commission on Human Rights and Opportunities, Hartford, Connecticut, of counsel), filed a brief on behalf of Connecticut Commission on Human Rights and Opportunities as Amicus Curiae.

Before: VAN GRAAFEILAND, CARDAMONE, and JACOBS, Circuit Judges.

CARDAMONE, Circuit Judge.

To resolve this appeal, we must construe a Connecticut statute prohibiting discrimination in employment practices in that state. Statutes are not empty vessels into which courts, under the guise of construing a statute, pour meaning. Not because it would spoil the statute in the same sense as pouring new wine into old wineskins "bursts the skins," spills the wine and spoils the skins, Mark 2:22 (R.A. Knox), but because it is the obligation of the courts instead to ascertain the legislature's purpose in enacting the law, as the elected representatives of the people. Such is what we propose to do in this case.

Donald Beason (plaintiff, employee, or appellant) appeals from a judgment of the United States District Court for the District of Connecticut dated March 19, 2002 (Droney, J.), that granted a motion for summary judgment made by his employer, the United Technologies Corporation, Hamilton Standard Division (defendant, employer, Hamilton Standard, or company) and dismissed his discrimination claim. Plaintiff alleges that the company perceived him to be disabled and based on that misperception discriminated against him. Although we affirm, we do so for different reasons than those relied upon by the district court.

BACKGROUND

Beason was employed at Hamilton Standard from December 1979 until September 1992 when he was injured while working. A mirror, intended to help company employees see around a turn, fell and struck him on the head, injuring his cervical spine, back, head, and other parts of his body, as well as causing him to lose consciousness temporarily. After suffering this injury, plaintiff applied for and received workers' compensation benefits and, except for a brief attempt to return to work, remained on medical leave until he was laid off, due to a lack of work, in March 1993. Beason and his employer settled his workers' compensation claim by stipulation for $35,000 in 1994.

Following his layoff, plaintiff's health improved to the point where he was able to return to work. In September 1995 he was recalled by Hamilton Standard, but was instructed to report first to the company's medical center for evaluation. The position that Beason was conditionally recalled for was referred to as a Commuter Blade Worker. Under the union's collective bargaining agreement, this position was categorized as demanding an intermediate level of physical effort, necessitating sustained periods of moderate physical effort and the occasional exertion of considerable effort involving heavy tools and materials. After his evaluation by the Hamilton Standard medical staff, Beason was informed that he could not return to work because of medical restrictions related to the injuries he had sustained in the September 1992 on-the-job accident.

In 1995 the employee's union filed a grievance on his behalf, and also on behalf of four other Hamilton Standard employees who were not recalled to work, alleging

that the company violated the non-discrimination clause contained in the collective bargaining agreement. The matter was submitted to arbitration and the grievance was denied.

While the union grievance was pending, plaintiff filed a charge of disability discrimination with the Connecticut Commission on Human Rights and Opportunities (Connecticut Commission) and the Equal Employment Opportunity Commission (EEOC). An investigation by the Connecticut Commission determined there was reasonable cause to believe that Hamilton Standard, by failing to recall Beason to work, discriminated against him in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen.Stat. § 46a–51 *et seq.*

Subsequently, plaintiff filed a complaint in district court asserting that Hamilton Standard had incorrectly perceived him as disabled and discriminated against him as a disabled person in violation of the ADA and the CFEPA. The company initially moved for judgment on the pleadings, urging that plaintiff's complaint be dismissed because discrimination claims under the collective bargaining agreement are subject to arbitration, and that his claim was barred by the prior decision of the arbitrator denying his grievance. In an opinion dated February 10, 1999, the district court denied Hamilton Standard's motion. *Beason v. United Techs. Corp.*, 37 F.Supp.2d 127, 128 (D.Conn.1999). It reasoned that because plaintiff's claims are statutory, not contractual, they are not subject to arbitration. *Id.* at 129–30.

The company then moved for summary judgment, which was granted by Judge Droney in an opinion dated March 15, 2002, disposing of all of plaintiff's claims. *Beason v. United Techs. Corp.*, 213

F.Supp.2d 103, 116 (D.Conn.2002). Ruling against Beason, the district court held that a reasonable juror could find that Hamilton Standard regarded him as suffering from a physical impairment, but concluded he had not established that the company regarded him as having a physical impairment that substantially limits a major life activity, as required by the ADA. *See id.* at 109, 114. After observing that Connecticut courts look to federal law for guidance on the enforcement of state anti-discrimination statutes, the district court dismissed plaintiff's CFEPA claim for the same reasons it had dismissed his federal cause of action. *See id.* at 115–16. A motion for reconsideration was denied on April 23, 2002. This appeal ensued.

■ Before turning to the merits, we dispose of a jurisdictional question raised by Hamilton Standard. It notes that while plaintiff filed a notice of appeal following the district court's grant of summary judgment in the company's favor, he did not file an amended notice of appeal following the district court's denial of his motion for reconsideration as required by Fed. R.App. P. 4(a)(4)(B)(ii). Hamilton Standard contends this deficiency deprives us of jurisdiction to hear Beason's legal arguments that were raised, in the first instance, in connection with his motion for reconsideration.

As a general rule, "a federal appellate court does not consider an issue not passed upon below." *See Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). This rule, however, is prudential, *see Lo Duca v. United States*, 93 F.3d 1100, 1104 (2d Cir.1996), and "we have chosen to exercise such discretion in cases where the issues not addressed below involved purely legal questions," *see J.C. v. Reg'l Sch. Dist. 10*, 278 F.3d 119, 125 (2d Cir.2002). The problem here is *not* that Beason raises issues that have not been

considered and passed upon by the district court; rather, the difficulty is that Beason's notice of appeal pre-dates the district court's judgment on his motion for reconsideration, and thus his notice of appeal does not technically encompass that judgment. Under these circumstances, where the district court has had, in fact, an opportunity to rule on the substantive issues and where such issues are purely legal, we choose to exercise our discretion and to credit in this appeal before us the arguments Beason first made in support of his motion for reconsideration.

## DISCUSSION

### I  Overview and Standards

Although appellant initially pursued claims under both the ADA and the CFEPA, he now appeals only the district court's dismissal of his CFEPA cause of action, contending that the grant of summary judgment in favor of his employer constituted an error of law. Beason asserts the ADA's definition of disability is different from—and much narrower than—the applicable CFEPA definition of physical disability. He maintains that the trial court's decision, which employed ADA standards to evaluate his CFEPA claim, was thus in error. The appellant is joined in this argument by the Connecticut Commission, which filed an *amicus curiae* brief advising that the trial court erred in applying an analysis lifted from the Americans with Disabilities Act to a claim of discrimination on the basis of physical disability under Connecticut state law.

Hamilton Standard does not dispute Beason's argument that it was an error to employ the ADA's definition of disability to decide a CFEPA claim. The company instead urges that the district court committed a separate error of law by recognizing a cause of action for perceived (or "regarded as") disability discrimination, which, the company insists, is contemplated by the ADA, but not by the CFEPA.

Our review of the district court's grant of summary judgment is *de novo*. *Zalewska v. County of Sullivan*, 316 F.3d 314, 318 (2d Cir.2003). In the case at hand we must answer two questions: (1) whether the CFEPA definition of physical disability differs substantively from the ADA's definition of disability, and (2) whether the CFEPA provides a cause of action for perceived physical disability discrimination. We take up each of these questions of Connecticut law and attempt to ascertain how Connecticut's highest court would answer them, hindered in resolving them by the absence of any direct precedent from the Connecticut Supreme Court, the state's highest court, but aided by several lower state court decisions. *Sprint PCS L.P. v. Conn. Siting Council*, 222 F.3d 113, 115–16 (2d Cir.2000) (finding that the question of whether Connecticut state law required a party to exhaust additional administrative remedies was "a quintessential question of statutory interpretation requiring *de novo* review" and a "predict[ion as to] how the forum state's highest court would decide the issue[ ]").

Although the Connecticut Supreme Court has not directly considered the issues we address today, its precedent on statutory construction gives us considerable direction. The court, in its recent decision *State v. Courchesne*, 262 Conn. 537, 816 A.2d 562 (2003), clarified its approach to statutory interpretation. In so doing, it rejected what has come to be called the "plain meaning rule" and adopted instead a process that the court characterized as "a reasoned search for the intention of the legislature." *Id.* at 577, 816 A.2d 562 (adopting the formulation for statutory interpretation developed in *Bender v. Bender*, 258 Conn. 733, 741, 785 A.2d 197 (2001)). According to the Connecticut Su-

preme Court, it begins the task of statutory interpretation with "a searching examination of the language of the statute, because that is the most important factor to. be considered." *Id.* It insists, however, that the process does not end with language. Rather, after examining the language of the statute to determine a range of plausible meanings and those that appear most probable, it endeavors further to inform its understanding of the statute by looking "to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." *Id.* (quoting *Bender,* 258 Conn. at 741, 785 A.2d 197).

■ Beyond the general guidance provided to us by the decision in *Courchesne,* the Connecticut Supreme Court has also identified in its jurisprudence several relevant principles of statutory construction that are specific to the interpretation of the state's anti-discrimination statutes. First, it has indicated that it interprets remedial statutes "liberally in order to effectuate the legislature's intent." *Comm'n on Human Rights & Opportunities v. Sullivan Assocs.,* 250 Conn. 763, 782, 739 A.2d 238 (1999). Second, it has revealed a willingness to "review federal precedent concerning employment discrimination for guidance in enforcing [the state's] own anti-discrimination statutes," *Levy v. Comm'n on Human Rights & Opportunities,* 236 Conn. 96, 103, 671 A.2d 349 (1996), but has cautioned that it is not bound by federal interpretation and that, under certain circumstances, federal law "defines the beginning and not the end of [Connecticut courts'] approach to the subject," *State v. Comm'n on Human Rights & Opportunities,* 211 Conn. 464, 470, 559 A.2d 1120 (1989). Third, Con-

necticut's highest Court has also declared that, when comparing comparable state and federal statutes, it employs "the usual rule in statutory interpretation. that the difference between the state and federal acts was purposeful and is meaningful." *Evening Sentinel v. Nat'l Org. For Women,* 168 Conn. 26, 34–35 n. 5, 357 A.2d 498 (1975).

## II CFEPA Definition of "Physically Disabled"

With this overview of the state Supreme Court's approach to statutory interpretation, we turn to the questions before us. We fully recognize that affirmance may rest entirely on the discussion in Part III but undertake the following analysis in Part II in the interest of completeness. The district court dismissed appellant's CFEPA claim without lengthy analysis. It observed that federal law concerning employment discrimination guides the enforcement of Connecticut's anti-discrimination statutes and then reasoned that, because appellant could not make out a *prima facie* case of discrimination under the ADA, his CFEPA claim necessarily failed as well. This analysis, however, assumed that there are no substantive differences between the scope of the ADA and the CFEPA and required, for both claims, that the appellant demonstrate that he was perceived to have a physical impairment that substantially limits a major life activity. We think this was error.

■ Following the Connecticut Supreme Court's lead, we begin our analysis with an examination of the plain text of the CFEPA, comparing it to the relevant text of the ADA. Under the CFEPA it is a prohibited practice for an employer—except in the case of a *bona fide* occupational qualification or need—to refuse to hire or employ or to discharge from employment

an individual because of the individual's physical disability. Conn. Gen.Stat. § 46a–60(a)(1). The CFEPA defines the term "[p]hysically disabled" as "refer[ring] to any individual who has *any chronic physical handicap, infirmity or impairment*." Conn. Gen.Stat. § 46a–51(15) (emphasis added). The ADA also prohibits disability-based discrimination and similarly defines disability as "a physical or mental impairment." But, significantly, it adds a requirement that the impairment "*substantially limit[] one or more of the major life activities* of [the] individual." 42 U.S.C. § 12102(2)(A) (emphasis added).

We have ruled that the ADA's requirement that a physical disability substantially limit a major life activity is "a significant threshold for seeking redress under the ADA." *Felix v. N.Y. City Transit Auth.*, 324 F.3d 102, 107 (2d Cir.2003). Absent similar language in the CFEPA, we believe the Connecticut Supreme Court would decline to find the CFEPA possesses the same restrictive threshold. Such view is consistent with both the Connecticut Supreme Court's precedent that the most important factor to be considered when interpreting a statute is its language, *see Courchesne*, 262 Conn. at 577, 816 A.2d 562, and with its view that remedial statutes should be construed liberally, *see Sullivan Assocs.*, 250 Conn. at 782, 739 A.2d 238.

Our conclusion that Connecticut and federal laws do not provide coextensive disability discrimination coverage is bolstered by legislative history. The Connecticut General Assembly first made disability discrimination an unlawful employment practice in 1973 under the CFEPA. *See* An Act Concerning the Rights of the Blind and Otherwise Physically Disabled, 1973

Conn. Acts 503 (Reg. Sess.). The state legislature added a specific definition of physical disability to the statute the following year, *see* An Act Defining Physically Disabled, 1974 Conn. Acts 970 (Reg. Sess.), and then amended the definition again in 1975, so that the present definition of physical disability has been in force, unchanged save for a minor technical adjustment, since 1975. *See* An Act Defining Physically Disabled, 1975 Conn. Acts 330 (Reg. Sess.); An Act Implementing a Technical Revision of the Statutes Concerning Human Rights and Opportunities, 1980 Conn. Acts 586 (Reg. Sess.).

The ADA was not enacted until 1990, *see* Americans with Disabilities Act of 1990, Pub. L. No. 101–336, 104 Stat. 327 (1990), but its definition of disability borrows heavily from a definition contained in the Rehabilitation Act, *see* Rehabilitation Act of 1973, Pub. L. No. 93–112, 87 Stat. 355 (1973) (codified as amended at 29 U.S.C. § 701 *et seq.*), which was enacted by Congress in 1973 and amended in 1974 to define a "handicapped individual" as a person who has "a physical or mental impairment which *substantially limits one or more of such person's major life activities*." Rehabilitation Act Amendments of 1974, Pub. L. No. 93–651, § 111(a), 89 Stat. 2–3, 2–5 (1974) (emphasis added).[1] Given that the definition of disability used by the ADA essentially pre-dates the definition of physical disability promulgated by the Connecticut General Assembly for the CFEPA, the General Assembly, had it wished to do so, could have adopted the ADA definition. The fact that the General Assembly chose not to adopt that language readily supports an inference that the Connecticut legislature appreciated the scope of the ADA definition and intended the

1. The relevant definition from the Rehabilitation Act has not changed substantively but the term "individual with a disability" is now used in place of the term "handicapped individual." *See* 29 U.S.C. § 705(20)(B)(I).

CFEPA definition to be different. *See Evening Sentinel,* 168 Conn. at 34–35 n. 5, 357 A.2d 498.

Moreover, the case law on point, although not extensive, uniformly confirms our belief that the CFEPA's definition of physical disability is broader than the ADA's. For example, in *Shaw v. Greenwich Anesthesiology Assocs., P.C.,* 137 F.Supp.2d 48 (D.Conn.2001), the district court dismissed a plaintiff's ADA claim on summary judgment finding that her arthritis did not substantially limit a major life activity, *see id.* at 54, but refused to grant summary judgment with respect to the plaintiff's CFEPA claim, ruling that "[t]o be 'disabled' under Connecticut law is different from being 'disabled' under the ADA." *Id.* at 65. The district court in *Shaw* cited as authority *Venclauskas v. State,* No. CV 960471879, 1997 Conn.Super. LEXIS 1643, 1997 WL 375654 (Conn.Super. May 14, 1997). In *Venclauskas* a Connecticut Superior Court rejected a defendant's assertion that a CFEPA plaintiff, "by analogy to federal anti-discrimination statutes," could not be considered disabled within the meaning of the CFEPA. *Id.* at *1. Instead the state court held that, without reference to whether plaintiff's physical impairment substantially limited a major life activity, plaintiff had alleged sufficient facts to support a finding that he was disabled within the meaning of Connecticut state law. *Id.* at *3, *6–*7. At least two other Connecticut Superior Courts have similarly ruled plaintiffs to be disabled pursuant to the CFEPA without considering or mentioning whether those plaintiffs were substantially limited in a major life activity. *See Gilman Bros. Co. v. Conn. Comm'n on Human Rights & Opportunities,* No. CV 950536075, 1997 Conn.Super. LEXIS 1311, *8–*10, 1997 WL 275578 (Conn.Super. May 13, 1997); *Tordonato v. Colt's Mfg. Co.,* No. CV 970481610S, 2000 Conn.Super. LEXIS 3615, *13–*14, 2000 WL 33124392 (Conn.Super.Ct. 26, 2000).

Moreover, the Connecticut Commission on Human Rights and Opportunities, which enforces the CFEPA in administrative proceedings, has recognized the difference between Connecticut and federal law regarding the definition of disability. *See, e.g., CHRO ex rel. Kowalczyk v. City of New Britain,* CHRO No. 9810482, at *25–*26 (Mar. 15, 2002) ("The definitions of 'disability' in the ADA and [C]FEPA—and the interpretive case law—differ significantly .... [C]FEPA, unlike the ADA, does not require the complainant to prove that she is substantially limited in a major life activity."); *CHRO ex rel. Saksena v. State,* CHRO No. 9940089, at *10 (Aug. 9, 2001) (same); *CHRO ex rel. Secondo v. Hous. Auth.,* CHRO No. 9710713, at *24 (June 9, 2000) ("Although the complainant is not disabled under the ADA ... the broader definition of disability under state law yields a different result than the federal definition.").

We note, in addition, that the New York Human Rights Law, N.Y. Exec. Law § 290 *et seq.,* a state anti-discrimination statute that, like the CFEPA, lacks any mention of the ADA's "substantially limit a major life activity" language in its definition of disability, *see id.* § 292(21), has been interpreted by the New York Court of Appeals as providing relief to a broader range of impairments than does the ADA. *See State Div. of Human Rights v. Xerox Corp.,* 65 N.Y.2d 213, 218–19, 491 N.Y.S.2d 106, 480 N.E.2d 695 (1985); *see also Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 155 (2d Cir.1998) (discussing the standard for finding a protected disability under New York law).

In sum, the trial court—by relying on the ADA's standard for determining whether a person is disabled within the

meaning of that state statute—committed an error of law that resulted in its improperly dismissing Beason's CFEPA claim.

### III  CFEPA and "Regarded As" Disability Discrimination

Our conclusion that the district court erroneously construed the scope of the CFEPA definition of physical disability does not end the inquiry into whether the grant of summary judgment for the employer was proper.  Hamilton Standard avers that, the relevant definition of physical disability aside, the appellant actually benefitted from another error of law committed by the district court, namely, the district court's recognition of a cause of action for "regarded as" or "perceived" physical disability discrimination.  The company urged this point before the trial court, which remained unpersuaded.  That court declared instead that Connecticut has recognized the claims of those persons who have been discriminated against based on the perception of a disability, rather than an actual disability.  *Beason*, 213 F.Supp.2d at 115.  The employer insists that it was rightfully granted summary judgment on its employee's CFEPA claim because the trial court erred in recognizing such a cause of action in the first place. We agree that Connecticut law does not provide a cause of action for perceived physical disability discrimination.

### A.  *Statutory Language*

As in our discussion of the first issue, analysis begins with a close reading of the statute in question.  The exact language of the relevant provision of the CFEPA reads as follows

It shall be a discriminatory practice in violation of this section:

For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disability, mental retardation, learning disability or physical disability, including, but not limited to, blindness.

Conn. Gen.Stat. § 46a–60(a)(1).

Because the statute makes no mention of prohibiting discrimination on the basis of an individual's perceived physical disability, focus shifts to the statutory definition of physical disability, to assess whether that definition contemplates protecting individuals who are perceived to be—but are not actually—disabled.  The CFEPA definition of physical disability, in its entirety, states

"Physically disabled" refers to any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device.

Conn. Gen.Stat. § 46a–51(15).  Thus, the statute defines "[p]hysically disabled" only by using the active verb "has."

Conspicuously absent from this definition is any mention of the perception of a physical disability.  This absence stands in stark contrast to the definition of disability employed by the ADA. The federal statute provides that the term disability "means, with respect to an individual—(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record

of such an impairment; or (C) *being re-garded as having such an impairment.*" 42 U.S.C. § 12102(2) (emphasis added); *see also* 29 U.S.C. § 705(20)(B) (similarly defining "individual with a disability" for the Rehabilitation Act). Because the specific language of CFEPA makes no mention of a cause of action for "perceived" or "regarded as" physical disability discrimination, we do not believe it was part of the Connecticut legislature's purpose that such a cause exist.

## B. *Legislative History*

Another foray into the legislative history of the CFEPA provides substantiation for this view. First, as stated above in Section II, the Rehabilitation Act's definition of a handicapped individual—the precursor to the modern ADA definition of disability—was approved by Congress in 1974, one year before Connecticut enacted the CFEPA definition of physical disability that, in substance, has survived until this day. Significantly, the Rehabilitation Act's definition, which originated the federal requirement that an impairment substantially limit a major life activity in order to qualify as a disability, also amended the Act to extend its protections to individuals "regarded as having" such a substantially limiting impairment. *See* Rehabilitation Act Amendments of 1974, Pub.L. No. 93–651, § 111, 89 Stat. 2–3, 2–5 (1974).

Consistent with the notion that the Connecticut General Assembly, if it had wanted to do so, could have adopted the Rehabilitation Act's "substantially limit a major life activity" language, we similarly think that the Connecticut legislature—had that been its purpose—could have expressly adopted a cause of action for perceived physical disability discrimination. The absence of any reference to such a claim in the CFEPA strongly suggests that the present difference between Connecticut

and federal law with respect to "regarded as" physical disability discrimination "was purposeful and is meaningful." *Evening Sentinel,* 168 Conn. at 34–35 n. 5, 357 A.2d 498.

A second indication of legislative aim may be derived from the observation that, despite the absence of "regarded as" language from the CFEPA definition of physical disability, the Connecticut legislature has, in at least two instances, otherwise chosen to employ equivalent language in the state's anti-discrimination statutes. In 1991, for instance, the General Assembly approved a statute that prohibits certain kinds of discrimination against people because of their sexual orientation. *See* Conn. Gen.Stat. §§ 46a–81a—46a–81r. In using the term sexual orientation, the legislature defined it broadly as "having a preference for heterosexuality, homosexuality or bisexuality, having a history of such preference or *being identified with such preference.*" Conn. Gen.Stat. § 46a–81a (emphasis added).

The General Assembly has also introduced the element of perception into the state's anti-discrimination laws via the CFEPA definition of "mental disability." That term, undefined until 2001, has since been defined by the Connecticut legislature as referring to "an individual who has a record of, or *is regarded as having* one or more mental disorders." Conn. Gen. Stat. § 46a–51(20) (emphasis added). We also are aware that, despite the introduction of a bill in both 1999 and 2000—backed by the Connecticut Commission—that would have made a similar change to the definition of physical disability, the Connecticut legislature declined to amend the law. *See* An Act Concerning Discrimination on the Basis of Disability, Discriminatory Practice Complaints and Discrimination and Prohibiting Age Discrimination

in Health Insurance Policies, H.B. 6970 § 1(21) (1999).

## C. *Appellant's Contentions*

Despite the plain language of the CFE-PA and the legislative history recounted above, appellant insists that the Connecticut Supreme Court, if presented with the question, would nonetheless decide that the CFEPA provides a cause of action for perceived physical disability discrimination. In support of his assertion, Beason cites a handful of relevant cases, points to the Connecticut Commission's longstanding position that the Act does indeed provide such a cause of action, suggests that finding such a cause of action is the only reasonable interpretation of the statute, and invokes various public policy arguments.

With respect to the relevant case law, of which there is actually very little, we do not think it readily undermines our conclusion that the CFEPA does not recognize a cause of action for perceived physical disability discrimination. Only four courts have addressed the issue. The district court in the instant case is one of them. It held, of course, that the CFEPA recognizes a cause of action for perceived physical disability discrimination. It made that determination without any analysis, simply relying on a lone citation to *Shaw*, 137 F.Supp.2d at 66 n. 22. *See Beason*, 213 F.Supp.2d at 115. The relevant part of *Shaw* was itself premised upon only a single case, *CHRO ex rel. Tucker v. General Dynamics Corp.*, No. 517054, 1991 Conn.Super. LEXIS 2704, 1991 WL 258041 (Conn.Super. Nov. 22, 1991). The district court also recently held in *Connor v. McDonald's Restaurant* that a cause of action for perceived disability discrimination exists, relying exclusively on citations to *Shaw* and *Tucker*. *See Connor*, No. 3:02 CV 382, 2003 U.S.Dist. LEXIS 4108,

at *12–*13, 2003 WL 1343259 (D.Conn. Mar. 19, 2003). While no Connecticut case contradicts the Superior Court's holding in *Tucker*, no state court has considered the issue since and, in fact, no Connecticut case has even cited *Tucker*. In light of this scant precedent premised entirely on a single state trial court opinion we are not persuaded that our analysis is wrong.

■ We similarly find the position of the Connecticut Commission, the agency charged with administering the CFEPA, to be unpersuasive authority. Although it is a well established practice of the Connecticut Supreme Court to "accord great deference to the construction given a statute by the agency charged with its enforcement," *see Starr v. Comm'r of Envtl. Prot.*, 226 Conn. 358, 372, 627 A.2d 1296 (1993), such deference is not absolute. The Connecticut Commission has consistently ruled in its administrative decisions that the CFEPA implies a cause of action for perceived or "regarded as" physical disability discrimination. *See, e.g., CHRO ex rel. Abney v. City of Waterbury*, CHRO No. 9037286, at *15 (July 14, 1992); *Williams v. Town of Stratford*, CHRO No. 850296, at *7 (Aug. 24, 1990). The Connecticut Supreme Court has nonetheless held that deference to an administrative agency is unwarranted when the construction of a term or phrase is "a question of law that ha[s] not previously been subject to judicial scrutiny." *Bridgeport Hosp. v. Comm'n on Human Rights & Opportunities*, 232 Conn. 91, 110, 653 A.2d 782 (1995) (citing *Dep't of Admin. Servs. v. Employees' Review Bd.*, 226 Conn. 670, 679, 628 A.2d 957 (1993)). Whether the CFEPA includes a cause of action for perceived physical disability discrimination is precisely such a question of law and, given the absence of any ambiguity, we decline to defer to the Connecticut Commission's view. *See Lieberman v. State Bd. of La-*

*bor Relations*, 216 Conn. 253, 263–64, 579 A.2d 505 (1990) (declining to defer to board's view because, in part, "the board's interpretation of the statutory scheme at issue is a question of law that has not previously been subjected to judicial scrutiny").

Of the appellant's remaining arguments, his invocation of various public policy rationales and his contention that finding a cause of action for perceived physical disability discrimination is the only reasonable interpretation of the statute are closely related. In essence, he maintains that given the public policy reasons that support recognition of such a cause of action, it is unreasonable to interpret the statute to operate otherwise. There may be strong arguments in favor of outlawing perceived disability discrimination, but such arguments must be evaluated by the legislature. *See Thibodeau v. Design Group One Architects, LLC*, 260 Conn. 691, 715, 802 A.2d 731 (2002) (noting that, "just as the primary responsibility for formulating public policy resides in the legislature[,] so, too, does the responsibility for determining, within constitutional limits, the methods to be employed in achieving those policy goals"). We must construe the statute presented to us, and the construction we adopt today cannot be said to be unreasonable, unworkable, difficult, or bizarre. *Cf. Butler ex rel. Skidmore v. Hartford Technical Inst., Inc.*, 243 Conn. 454, 461–62, 704 A.2d 222 (1997) (rejecting statutory interpretation that yielded bizarre and difficult results).

Absent these untenable results and, even assuming that the lack of such a cause of action is a legislative oversight, we nevertheless must adhere to the plain language of the CFEPA, which makes no mention of a cause of action for perceived physical disability discrimination. The Connecticut Supreme Court instructs that "the more strongly the bare text of the language suggests a particular meaning, the more persuasive the extratextual sources will have to be in order for us to conclude that the legislature intended a different meaning." *Courchesne*, 262 Conn. at 574, 816 A.2d 562. Although our ultimate holding is reached by reasoning that varies from the interpretation advanced by the district court and the Connecticut Commission, and is perhaps a trifle at odds with the view that Connecticut's remedial statutes should be construed liberally, *see Sullivan Assocs.*, 250 Conn. at 782, 739 A.2d 238, the holding is nonetheless consistent with legislative history and, more significantly, the language of the statute—the factor considered by the Connecticut Supreme Court to be the most important for interpreting a statute, *see Courchesne*, 262 Conn. at 577, 816 A.2d 562. In consequence, we conclude that no cause of action for perceived disability discrimination presently exists under Connecticut law.

## CONCLUSION

Accordingly, for the reasons stated, the grant of summary judgment in favor of Hamilton Standard is affirmed.