**Frank A. CARUSO, Plaintiff–Appellant,**

v.

**SIEMENS BUSINESS COMMUNICATION SYSTEMS, INC., Defendant–Appellee.**

**No. 04–1478–CV.**

United States Court of Appeals, Second Circuit.

Argued: Nov. 23, 2004.

Decided: Dec. 9, 2004.

Jonathan L. Gould, Hartford, CT, for Plaintiff–Appellant.

Alan D. Berkowitz, Dechert LLP, Philadelphia, PA (Melissa Bergman Squire, on the brief), for Defendant–Appellee.

Before: CALABRESI, B.D. PARKER, and RAGGI, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Frank Caruso was laid off by defendant-appellee Siemens Business Communication Systems, Inc. ("Siemens") in November 1997. He subsequently brought claims against Siemens for employment discrimination under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, as well as the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen.Stat. § 46a–51 *et seq.* The district court (Burns, J.) granted Siemens' motion for summary judgment upon determining that none of Caruso's alleged disabilities fell within CFEPA's scope.[1] Caruso now appeals that decision.

---

1. The district court had previously granted Siemens' motion for summary judgment on

We conclude that Connecticut law does not provide sufficient guidance as to whether Caruso's injuries qualify him as "physically disabled" under CFEPA. Because proper construction of this CFEPA requirement is unsettled, important, and a question likely to recur, and because the statute's interpretation implicates significant public policy considerations for Connecticut, we certify this question to the Connecticut Supreme Court.

## BACKGROUND

From 1979 until his termination in December 1997, Caruso was employed by Siemens and its predecessor corporation as a technician and customer engineer. In that role, Caruso completed wiring and repair work on company equipment located at the home or business of Siemens customers.

In January 1997, Caruso tripped over debris at a customer site and injured his knee and ankle. He subsequently filed for workers' compensation benefits, missed three weeks of work due to the injury, and worked a part-time schedule until March 1997, at which time Caruso was cleared to resume ordinary work activities. Caruso's physician advised him in March 1997 that surgery would ultimately be required to repair a torn meniscus in his knee. The physician advised him to avoid stair climbing until the operation had been scheduled, but Caruso disregarded this advice and continued to climb stairs at customer sites. His knee operation was not completed until February 1998, and did not completely restore his mobility.

In August 1997, Siemens' worker compensation review personnel requested that Caruso take a "functional capacity examination" to determine whether his knee injury continued to impair his on-the-job performance. During that examination, which required Caruso to complete various physical tasks, Caruso injured his back. He had no history of back pain prior to the functional capacity examination. As a result of his back injury, Caruso missed several additional days of work in August and early September.

Caruso claims that the physical exertion required by the functional capacity examination aggravated an existing umbilical hernia. Caruso concededly informed his manager, Michael Cyr, of the pain created by the aggravated hernia. But the parties dispute the date of that conversation. Siemens emphasizes that, in his deposition testimony, Caruso stated that he informed Cyr of the hernia in November 1997. Caruso submits that, in a subsequent affidavit, he reported discussing the injury with Cyr in September 1997. The district court apparently relied on the November 1997 date in ruling on defendant's motion for summary judgment.

In early September 1997, Garreth Hinsch, the manager of Siemens' Connecticut branch, was notified that the office would be required to reduce its work force by an unknown number of employees in the near future. Hinsch was instructed to begin "stack ranking" the branch's employees by department. At Hinsch's bequest, Siemens field managers assessed their employees based on a number of specific criteria.

Cyr, who was Caruso's manager during the evaluations, completed and submitted his employee rankings on October 2, 1997. Cyr ranked Caruso 13th out of the 14 customer engineers he managed (or, put another way, second in line to be terminated). Once the field managers submitted their rankings, Hinsch compiled a ranked

Caruso's ADA claim, and Caruso never appealed this ruling. *Cf. Caruso v. Siemens Business Sys., Inc.*, 56 Fed. Appx. 536 (2d Cir.2003).

list of employees by overall score, seniority, and job category. In the final evaluation, Caruso was the fourth-lowest ranked customer engineer (that is, the fourth customer engineer in the queue for termination).

At some point in September 1997, Siemens requested that Caruso obtain a medical release from his physician certifying that his back and knee injuries did not present the threat of any continuing physical restrictions. On October 1, 1997, Caruso provided Siemens with a letter from his physician clearing him to return to work on a full-time basis. The letter also stated, however, that Caruso should not be asked (1) to lift more than seventy-five pounds, (2) to bend or squat repetitively, or (3) to climb stairs prior to his knee operation. As noted above, Cyr completed his employee rankings the next day.

Three weeks later, on October 26, 1997, Hinsch was informed by Siemens' headquarters that he would be required to lay off four employees. The head office instructed Hinsch that these layoffs could be distributed across job categories as he saw fit. On that day, based on the rankings he received, Hinsch decided to terminate the four lowest-ranked customer engineers (of whom Caruso was the fourth). The layoff was to become effective on November 21, 1997. But because Caruso suffered an acute flair-up of his hernia requiring emergency surgery on November 3, 1997, and because that surgery kept him on medical leave for an extended period of time, Caruso was not informed of his termination until his return to work on December 15, 1997.

On May 19, 2000, Caruso filed an employment discrimination suit against Siemens. Caruso's complaint contained two claims: one for discrimination on the basis of disability in violation of the ADA, and another under CFEPA for substantially

the same acts. On April 25, 2002, the district court granted defendant's motion for summary judgment. The court determined that, based on the evidence gathered during discovery, none of Caruso's injuries qualified him as "disabled" under either the ADA or the CFEPA.

On appeal, we vacated and remanded the district court's decision with respect to his CFEPA claim. *See Caruso v. Siemens Business Systs., Inc.,* 56 Fed. Appx. 536 (2d Cir. Jan.23, 2003). We noted that the district court's analysis of "disability" under CFEPA was legally erroneous, as it equated a "chronic" disability under CFEPA with a "permanent" condition similar to those cognizable under the ADA. *Id.* We pointed out that this definition of "chronic" was at odds with the construction given to CFEPA by at least one Connecticut court. *See Gilman Bros. v. Conn. Comm'n on Human Rights & Opportunities,* CV–950536075, 1997 WL 275578, at *4 (Conn.Super.Ct. May 13, 1997) (defining "chronic" injuries as those "of long duration, or characterized by slowly progressive symptoms ... distinguished from acute"). We therefore concluded that the district court's imputation of a "permanence" requirement would impermissibly narrow CFEPA's scope, and in light of the complete diversity of citizenship among the parties to this litigation, sent Caruso's CFEPA claim back to the district court for reconsideration.

On February 5, 2004, the district court again granted summary judgment on Caruso's CFEPA claim after finding, for a second time, that Caruso was not "physically disabled" within the meaning of CFEPA. The court adopted *Gilman Bros.*'s interpretation of "chronic" disabilities under CFEPA. But it concluded that Caruso's "actual time of termination"— that is, December 15, 1997—"is not the relevant date" for ascertaining Caruso's

status as "physically disabled" under CFE-PA. The relevant date, according to the district court, was instead October 2, 1997, when "Cyr's analysis of Plaintiff's performance, which analysis led to his termination, was reported to Personnel." At the same time, the court refused to consider any evidence of plaintiff's condition after October 2. In support of these conclusions, the district court cited *Castellano v. City of New York*, 142 F.3d 58 (2d Cir.1998), which held that, in the context of the ADA, "[t]he determination of whether a person is qualified should be made at the time of the discriminatory action, e.g. hiring or promotion, and should not be based on the possibility that the employee or applicant will become incapacitated and unqualified in the future." *Id.* at 67, *quoting* H.R.Rep. No. 101–485(III), at 34 (1990). The court also expressed its belief that allowing possible future incapacitation to be considered was "an untenable proposition" that "would leave employers open for future claims of already-terminated employees *ad infinitem.*" It therefore invoked the maxim that "statutes should be interpreted to avoid ... unreasonable results whenever possible," *American Tobacco Co. v. Patterson*, 456 U.S. 63, 71, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982), to conclude that "Plaintiff's medical condition—as to his knee, back and hernia—months and years following his termination is legally irrelevant." [2]

Caruso now appeals the district court's decision. He is joined by three *amici curiae*, each urging reversal: (1) the Connecticut Commission on Human Rights and Opportunities; (2) the Connecticut Employment Lawyers Association; and (3) the Connecticut Office of Protection and Advocacy for Persons with Disabilities.

## DISCUSSION

We review the court's grant of summary judgment *de novo*, and draw all inferences and resolve all ambiguities in favor of the nonmoving party. *See Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 204 (2d Cir.2004).

Section 46a–60(a)(1) of CFEPA provides a right of recovery when "an employer ... discharge[s] from employment any individual ... because of the individual's ... physical disability." Section 46a–51(15), in turn, defines "physically disabled" as a person with

> any *chronic* physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device.

*Id.* (emphasis added). No statutory definition of "chronic" impairments, infirmities or handicaps is given.

■ This appeal squarely presents the question of what constitutes a "chronic"

2. The court also emphasized that Caruso's injuries were not severe. For example, the court determined that Caruso's knee injury placed only "minor restrictions on his activities," and that Caruso was able to delay his knee surgery for almost a year while continuing to work. As to the back injury, the court stressed that Caruso's physician initially described his back injury as "a sprain" which "even Plaintiff himself could not know ... might possibly continue for an extended time," and that "Plaintiff's own medical ex-

pert admits that, as late as December 15, 1997, he had no opinion regarding whether or not Plaintiff's knee and back injury were chronic." Finally, the court pointed out that Caruso's hernia was not a "disabling impairment" as of October 2, 1997, and that Caruso had "*de minimus* [sic] symptoms as to his hernia for three to four weeks prior to its significant flare-up on November 3, 1997, requiring surgery on November 4, 1997." SA37–38.

condition under CFEPA. It also requires us to determine at which point a plaintiff must demonstrate his status as "physically disabled," and what evidence may be offered to prove that status. Were we to conclude, as defendants urge us to, that plaintiff must demonstrate a "chronic" disability at the time of the adverse employment action—as opposed to the actual date of termination—we would still have to determine whether evidence post-dating that adverse employment action might be relevant to the question of whether the plaintiff's condition was "chronic" on the date at issue.[3] The parties concede that no definitive Connecticut interpretation of CFEPA addresses these issues. And we note that, in the absence of Connecticut precedents, the district court was forced to rely on a number of ADA cases—which may or may not reflect CFEPA's scope—to solve these problems.

Connecticut law permits the federal certification of questions of state law directly to the Connecticut Supreme Court "if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state." *See* Conn. Gen.Stat. § 51–199b(d) (2002). And "[t]his Court has long recognized that state courts should be accorded the first opportunity to decide significant issues of state law through the certification process." *Parrot v. Guardian Life Ins. Co. of America,* 338 F.3d 140, 144 (2d Cir.2003).

■ We conclude that the issues presented by this case warrant certification for four reasons. First, as both parties concede, no Connecticut court has ever provided an authoritative answer to several issues that govern the instant case. Second, CFEPA's proper interpretation is of great importance to Connecticut, as evinced by the *amicus* briefing provided by, *inter alia,* the administrative agencies charged with enforcing anti-discrimination statutes in the state's regulatory scheme. Third, each party presents alternative policy grounds for reading CFEPA in various ways. Siemens argues that a broad interpretation of CFEPA would leave businesses open to liability for avowedly non-discriminatory terminations; Caruso and *amici* counter that the district court's construction of CFEPA encourages employers to circumvent the statute by terminating employees at the earliest signs of any disability. We believe that the Connecticut Supreme Court should be given the opportunity to consider these arguments. *See*

---

**3.** For example, if a plaintiff were fired on Monday, and on Wednesday was diagnosed with leukemia, that post-termination evidence might well be deemed relevant to the question of whether the plaintiff was suffering from a "chronic" condition on Monday. Similarly, if a plaintiff was diagnosed with a hernia on Monday, was terminated on Tuesday, and then received successful corrective surgery on Wednesday, Connecticut might permit the defendant to submit evidence of the plaintiff's post-termination condition to establish that the condition was not, in fact, a long-lasting, "chronic" disability. Neither form of post-termination evidence would be germane to whether the employer's *motivation* at the time of the firing was discriminatory, but in each case, the post-termination evidence could be said to bear on the threshold question of whether the plaintiff's condition was "chronic" at the requisite time.

This court's determination of what post-action evidence an employer may offer to challenge a chronic condition claim must be considered in light of our recent decision in *Beason v. United Techs. Corp.,* 337 F.3d 271 (2d Cir.2003). Because *Beason* holds that, under Connecticut law, an employer's perception of employee disability at the time of an adverse action does not create a cause of action if the employee is not actually disabled, *id.* at 280–81, the admissibility of post-action evidence assumes particular importance. We note that the Connecticut Supreme Court has neither endorsed nor disavowed *Beason*'s construction of state law.

*Sealed v. Sealed,* 332 F.3d 51, 59 (2d Cir. 2003) ("Where a question of statutory interpretation implicates the weighing of policy concerns, principles of comity and federalism strongly support certification."). Finally, because litigation under CFEPA is not infrequent, we think that these issues are likely to recur.

█ For these reasons, and because we believe that CFEPA's interpretation "may be" dispositive of issues in this appeal,[4] this case is appropriate for certification. *See* Conn. Gen.Stat. § 51–199b(d). We respectfully certify the following questions to the Connecticut Supreme Court:

(a) What is the correct interpretation of "chronic" disabilities under CFEPA?

(b) At what point, in relation to the act of discrimination complained of, must a disability qualify as "chronic" to support recovery under CFEPA?

(c) If CFEPA applies only to disabilities that are "chronic" at the time of the alleged act of discrimination, is evidence of the progression of an illness or injury *after* the alleged act of discrimination probative of whether that disability was in fact "chronic" when the alleged act of discrimination occurred?

We invite the Connecticut Supreme Court to construe liberally and, if necessary, expand these certified questions to address related or other relevant issues in connection with this appeal. We retain jurisdiction over the case once the Supreme Court has either ruled on the certified questions or has declined certification.

It is hereby ORDERED that the Clerk of this Court transmit to the Connecticut Supreme Court a Certificate, as set forth below, together with a complete set of the briefs, appendix, and record filed by the parties in this Court. The parties are further ORDERED to bear equally such costs and fees, if any, as may be required by the Connecticut Supreme Court.

### CERTIFICATE

The foregoing is hereby certified to the Connecticut Supreme Court pursuant to Second Circuit Local Rule § 0.27 and Conn. Gen.Stat. § 51–199b(d), as ordered by the United States Court of Appeals for the Second Circuit.

█

---

4. In a footnote at the end of its written order, the district court concluded "in short form" that, even if Caruso were "physically disabled" under CFEPA, Caruso could not prove that Siemens' reason for terminating him was pretextual. We cannot affirm the district court on that ground, however, because the court's conclusion as to pretext relied on a legal assumption we now ask the Connecticut Supreme Court to review: that the date on which Caruso was slotted for termination, and not the date on which he was actually terminated, was the relevant date to ascertain whether Caruso's injuries were chronic.

We note that even if the district court's legal conclusion was correct, its subsequent factual determination that October 2, 1997 was the relevant date for such an analysis was incorrect (although the parties appear to have stipulated that the district court should use this date). Cyr gave Hinsch his ranked evaluations on October 2, and on the same day, the aggregated evaluations of all Siemens managers slotted Caruso as the fourth-lowest-ranked customer engineer. But it was not until October 26 that Hinsch decided to allocate all four layoffs to the customer engineer category. Therefore, even assuming the district court's legal analysis was correct, the relevant termination date was, at the earliest, October 26, 1997.